## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK A. FAVORS, et al.          )<br>                                 )<br>                                 )<br>         Plaintiffs,            )<br>                                 )<br>    v.                           )<br>                                 )<br>ANDREW M. CUOMO, et al.          )<br>                                 )<br>                                 )<br>         Defendants.             )<br>                                 ) | Case:  1:11-cv-05632-DLI-RLM<br>**ORAL ARGUMENT REQUESTED**<br>**Date of Service**: December 12, 2011 |

**MEMORANDUM IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT OR, IN THE ALTERNATIVE, TO STAY THIS CASE**

## TABLE OF CONTENTS

          **Page**

BACKGROUND ............................................................................................................... 1

    A.     New York's Recent Apportionment Statutes.......................................................... 1

    B.     Plaintiffs' Impasse Suit ......................................................................................... 3

ARGUMENT ..................................................................................................................... 4

I.     PLAINTIFFS' IMPASSE SUIT IS NOT RIPE ................................................................ 5

    A.     The Legislature Still Has Several Months To Enact A Redistricting Plan ............ 5

    B.     Plaintiffs' Various Allegations Do Not Render Their Suit Ripe ............................ 8

CONCLUSION .................................................................................................................. 11

CERTIFICATE OF SERVICE ............................................................................................ 13

Defendants Dean G. Skelos, Sheldon Silver, John J. McEneny, Roman Hedges, Michael F. Nozzolio, and Welquis R. Lopez respectfully submit this memorandum in support of their motion to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, to stay this impasse suit.  Plaintiffs acknowledge that New York's primary elections for State Assembly, State Senate, and Congress currently are scheduled for September 2012—yet they nonetheless seek, over nine months in advance, this Court's "prompt intervention" to redraw the legislative districts for those elections.  Compl. ¶¶ 13, 77.  Plaintiffs premise their attempt to displace the Legislature from its constitutionally delegated redistricting function on the bald assertion that "the redistricting process following the 2010 census has stalled."  *Id.* ¶ 3.  As is amply demonstrated by the case law and the historical record, however, it is clear that the Legislature still has months to enact a redistricting plan in time for the 2012 elections.  Plaintiffs' impasse suit therefore is unripe, and this Court should dismiss the Complaint or, in the alternative, stay this case pending the Legislature's failure to enact a redistricting plan in a timely manner.

## BACKGROUND

**A.     New York's Recent Apportionment Statutes**

The New York Legislature enacts an apportionment statute for State Assembly, State Senate, and Congressional districts after each federal census.  *See* New York Const. art. III, §§ 4–5.  The last two apportionment statutes were enacted in 1992 and 2002, no more than five months before the primary elections were held in those years.  Three counties in New York City—Queens, Kings (Brooklyn) and New York (Manhattan)—must secure preclearance of their plans under Section 5 of the Voting Rights Act, 42 U.S.C. 1973c.  Under that statute, the United States Justice Department has 60 days to administratively preclear such plans.  *Id.*

**1992 Apportionment Statute**. On March 9, 1992, the Legislature "voted to adopt a redistricting plan for the Senate and the Assembly" that reflected the 2000 Census. *Wolpoff v. Cuomo*, 600 N.E.2d 191, 192 (N.Y. 1992). Governor Mario Cuomo signed that plan into law on May 4, 1992, approximately four months before the September 1992 primaries. *See id.* The New York Court of Appeals upheld the plan less than two months later, on June 30, 1992. *See id.* at 194–95.

**Current Apportionment Statutes**. On January 25, 2002, a group of New York voters filed an impasse suit in the Southern District of New York alleging that the Legislature had failed to enact a redistricting plan based on the 2000 Census. *See Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 354–55 (S.D.N.Y. 2004) (per Walker, C.J.; Koeltl, J.; and Berman, J.), *aff'd* 543 U.S. 997 (2004). The Legislature enacted the two bills that became the apportionment statute for the State Assembly and State Senate on April 10 and 22, 2002, approximately five months before the September 2002 primary elections. *See id.* at 357. Governor Pataki signed those bills into law on April 22 and 24, 2002. *See id.*

By order dated April 26, 2002, a special three-judge court in the Southern District of New York appointed a special master to assist in developing a redistricting plan for New York's Congressional districts. *See Rodriguez v. Pataki*, 207 F. Supp. 2d 123, 125 (S.D.N.Y. 2002) (per Walker, C.J.; Koeltl, J.; and Berman, J.). The special master filed a proposed plan, which the court adopted on May 24, 2002. *See* 308 F. Supp. 2d at 357. Shortly thereafter, on June 5, 2002, the Legislature enacted its own Congressional apportionment statute superseding the court-approved plan, and Governor Pataki signed the Legislature's enactment into law the same day. *See id.* at 358.

The U.S. Department of Justice precleared the Legislature's Assembly and Senate districts on June 17, 2002, and its Congressional districts on June 25, 2002. *See id.* New York's 2002 elections were timely held under the Legislature's redistricting plans. *See id.* at 358–59. The three-judge court eventually upheld those plans against a panoply of constitutional and legal challenges. *See id.* at 351–54.

### B. Plaintiffs' Impasse Suit

Plaintiffs allege to be six registered New York voters. *See* Compl. ¶¶ 14–19. Defendants are state officers sued in their official capacity and the New York Legislative Task Force on Demographic Research and Reapportionment ("LATFOR"). *See id.* ¶¶ 20–28. Defendant Skelos is the Majority Leader and President *Pro Tempore* of the New York Senate. *See id.* ¶ 23. Defendant Silver is the Speaker of the New York Assembly. *See id.* ¶ 24. Defendants McEneny, Hedges, Nozzolio, and Lopez are members of LATFOR. *See id.* ¶ 28.

The gravamen of Plaintiffs' Complaint is that the legislative districts enacted in 2002 are malapportioned under the 2010 Census, and that the Legislature is at an impasse and will not enact a new apportionment statute in time for the 2012 elections. *See, e.g.*, *id.* ¶¶ 59–68; 106–42. Plaintiffs also allege that LATFOR has failed to comply with New York's prisoner allocation law in formulating recommendations for a new redistricting plan. *See id.* ¶¶ 143–55.

Plaintiffs acknowledge that New York's legislative primaries currently are scheduled for September 2012. *See id.* ¶ 77. Plaintiffs nonetheless allege that "the redistricting process following the 2010 census has stalled" such that this Court's "prompt intervention" is required to "avert [an] impending electoral disaster." *Id.* ¶¶ 3, 5, 13. Plaintiffs specifically ask the Court to "appoint[] a Special Master" and to redraw New York's State Assembly, State Senate, and Congressional districts immediately, even though the primaries still are more than nine months

away. *Id.* ¶ 5. Plaintiffs make no mention of the timing of the Legislature's enactment of the 1992 and 2002 apportionment statutes.

## ARGUMENT

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Ripeness is a jurisdictional inquiry" because it is "a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005).

Plaintiffs' potential constitutional injury is voting in districts that are malapportioned because of the unequal population levels demonstrated by the 2010 Census. Of course, redistricting occurs every ten years to reflect the new census data. *See, e.g.*, *Reynolds v. Sims*, 377 U.S. 533, 583–84 (1964); New York Const. art. III, §§ 4–5. Thus, Plaintiffs' injury will not occur unless and until the Legislature seeks to hold elections without equalizing population through a new redistricting plan based on the latest census. This injury is not ripe because the Legislature still has many months to enact a redistricting plan in time for the 2012 elections.

Moreover, it is important to recognize that the danger of premature adjudication is particularly acute in the redistricting context. Such premature action not only improperly adjudicates speculative "cases or controversies" under Article III; it also impermissibly usurps the constitutionally assigned prerogatives of state legislatures. The Supreme Court "has repeatedly held that redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to pre-empt." *Wise v. Lipscomb*, 437 U.S. 535, 539 (1978) (collecting cases). In short, "the Constitution leaves with the States the primary

4

responsibility for apportionment of their federal congressional and state legislative districts." *Growe v. Emison*, 507 U.S. 25, 34 (1993); *Rodriguez*, 308 F. Supp. 2d at 352 ("New York's . . . redistricting laws are well within the purview and political prerogative of the State Legislature."). Thus, "[a]bsent evidence that [a state] will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." *Growe*, 507 U.S. at 34; *see also id.* at 33 ("In the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative or judicial branch, has begun to address that highly political task itself.").[1]

In light of these principles, federal courts ordinarily have concluded that impasse suits are not sufficiently cognizable to warrant corrective action until, at most, four months before the next primary elections. Moreover, the Legislature's enactment of New York's last two redistricting plans in a similar time-frame demonstrates that this provides ample time to secure Section 5 preclearance and to prepare for and hold timely elections. Thus, the Court should dismiss the Complaint or, in the alternative, stay this impasse case in deference to the Legislature's performance of its constitutionally delegated redistricting duty.

## I. PLAINTIFFS' IMPASSE SUIT IS NOT RIPE

### A. The Legislature Still Has Several Months To Enact A Redistricting Plan

Ripeness doctrine implicates the jurisdictional "case or controversy" requirement of Article III. *See Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003); *Murphy*, 402 F.3d at 347. "Ripeness is peculiarly an issue of timing. Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract

---

[1] Plaintiffs acknowledge that the Legislature's efforts to develop a redistricting plan are underway. Compl. ¶ 76.

5

disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (citation and internal quotation marks omitted). A claim is not ripe for adjudication where it rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas*, 473 U.S. at 580–81 (citation and internal quotation marks omitted); *see also Texas v. United States*, 523 U.S. 296, 300 (1998).

   The Supreme Court's decision in *Texas v. United States* is instructive. There, the State of Texas sought a declaratory judgment that a statutory procedure authorizing the State Commissioner of Education to appoint a master for an underperforming school district was not subject to the Voting Rights Act's preclearance requirement. *See Texas*, 523 U.S. at 298–99. The Supreme Court held that the suit was not ripe because the alleged harm was "contingent on a number of factors" such as the existence of an underperforming school district, the failure of other statutory remedies, and the Commissioner's decision to invoke the appointment remedy. *Id.* at 300. The Supreme Court therefore held that Texas's claim was "too speculative" to warrant immediate judicial resolution. *Id.* at 301; *see also Little v. Strange*, _ F. Supp. 2d _, 2011 WL 2462649, *17 (M.D. Ala. June 21, 2011) (dismissing as unripe Voting Rights Act challenge to Alabama's statute regulating disclosure of judicial campaign contributions).

   A federal district court in Virginia recently applied these principles to dismiss as unripe an impasse suit challenging the General Assembly's alleged failure to timely reapportion Virginia's Senate districts for the 2011 elections. *See Carter v. Virginia State Bd. of Elections*, No. 3:11-cv-7, 2011 WL 665408 (W.D. Va. Feb. 15, 2011) ("*Carter I*"). Although "Virginia ha[d] not yet enacted a redistricting plan based on the current Census," the court noted that it still had nearly four months to enact such a plan. *Id.* *2. The court thus found "no reason to suspect that Virginia's lawmakers will fail to enact appropriate redistricting legislation in a timely

6

manner" and, therefore, "no basis for the requested relief." *Id.* The court further reasoned that "as the Constitution leaves states with the primary responsibility for the apportionment of state legislative districts, . . . it would be repugnant to principles of federalism and the separation of powers to interfere with the General Assembly's or the governor's prerogatives now." *Id.*; *see also Carter v. Virginia State Bd. of Elections*, No. 3:11-cv-00030, 2011 WL 1637942 (W.D. Va. Apr. 29, 2011) ("*Carter II*"); *Upham v. Seamon*, 456 U.S. 37, 41 (1982) (per curiam) ("'Judicial relief becomes appropriate only when a legislature fails to reapportion . . . in a timely fashion *after having an adequate opportunity to do so*.'" (quoting White v. Weiser, 412 U.S. 783, 794–95 (1973) (emphasis added)).

Here, similarly, there is more than enough time for the Legislature to fulfill its constitutionally delegated redistricting duty. As Plaintiffs acknowledge, New York's legislative primaries are scheduled for September 2012—nearly ten months after the filing of Plaintiffs' Complaint and nine months from now. *See id.* ¶ 77. In prior impasse suits involving jurisdictions both covered and not covered by Section 5 of Voting Rights Act, federal courts have concluded that the plaintiffs' claims are not sufficiently cognizable to even begin taking steps toward drawing redistricting plans until approximately four months before the next primaries. *See, e.g.*, *Rodriguez*, 207 F. Supp. 2d at 125 (appointing special master four-and-a-half months before primaries); *Flateau v. Anderson*, 537 F. Supp. 257, 266 (S.D.N.Y. 1982) (according New York Legislature until approximately five months before the primaries to adopt a redistricting plan); *Smith v. Clark*, 189 F. Supp. 2d 503, 504–05 (S.D. Miss. 2002) (beginning to draft redistricting plan less than two months before deadline to declare candidacy), *aff'd sub nom. Branch v. Smith*, 538 U.S. 254, 262 (2003) ("there is no suggestion that the District Court failed to allow the state court adequate opportunity to develop a redistricting plan"); *Miss. State*

7

*Conf. of NAACP v. Barbour*, No. 3:11-cv-159, 2011 WL 1870222, * 9 (S.D. Miss. May 16, 2011) (staying impasse suit until end of election-year state legislative session), *aff'd* 2011 WL 5118830 (U.S. Oct. 31, 2011); *Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 867–68 (E.D. Wisc. 2001) (staying impasse suit until February of election year).

There is no evidence that the Legislature "will fail timely to perform" its constitutional redistricting duty, *Growe*, 507 U.S. at 34—and, in fact, the historical record squarely establishes that the Legislature will enact a redistricting plan well in advance of the primaries. The Legislature enacted the current apportionment statute for the State Assembly and State Senate less than five months before the September 2002 primaries, and the current Congressional apportionment statute approximately three months before those primaries. *See Rodriguez*, 308 F. Supp. 2d at 357–58. Those enactments left sufficient time to obtain Voting Rights Act preclearance from the Department of Justice, *see id.*; *see also* Compl. ¶ 101, and to hold the 2002 elections as scheduled. Likewise, the 1992 redistricting plans for the State Assembly and Senate were signed into law approximately four months before the primaries, which accorded more than enough time for the New York Court of Appeals to review and approve those plans. *See Wolpoff*, 600 N.E.2d at 192–95. Given that the Legislature successfully enacted redistricting plans in 1992 and 2002, and that the three to five months of lead time was sufficient to prepare for and hold timely elections, there is "no reason to suspect that [New York's] lawmakers will fail to enact appropriate redistricting legislation in a timely manner" in the nine months remaining before the primaries. *Carter I*, 2011 WL 665408, *2. Plaintiffs' suit is unripe.

**B.     Plaintiffs' Various Allegations Do Not Render Their Suit Ripe**

Plaintiffs offer four sets of allegations in an attempt to avoid the straightforward conclusion that their suit is not ripe, none of which withstand even minimal scrutiny. *First*, Plaintiffs allege that LATFOR has not yet allocated New York-resident prisoners to their home

8

districts as required by New York's prisoner reallocation law. Compl. ¶¶ 85–95. But even Plaintiffs acknowledge that LATFOR has begun the prisoner reallocation process and has asked its staff for "a recommendation on how to proceed." *See id.* ¶¶ 90–91. A redistricting plan can be drawn just as quickly with prisoner reallocation as one without such reallocation. Plaintiffs simply offer no explanation as to why this Court should assume this sovereign function of the Legislature at this early juncture.

*Second*, Plaintiffs aver that Governor Andrew Cuomo "has promised to veto any redistricting [plan]" enacted by the Legislature. *See id.* ¶¶ 69–76. Yet Plaintiffs' request that the Court pretermit immediately the political process because the Governor may veto a redistricting plan that the Legislature has not yet even enacted is precisely the type of reliance on "contingent future events that may not occur as anticipated, or indeed may not occur at all" that renders Plaintiffs' impasse suit unripe. *Thomas*, 473 U.S. at 580–81; *Texas*, 523 U.S. at 300. Moreover, "[w]hether the Governor signs [the Legislature's plan], vetoes it, or fails to act on it at all, there are no [New York legislative] elections until the primary" currently scheduled for September 2012. *Carter II*, 2011 WL 1637942, *2. Plaintiffs' prediction as to how the political process may play out in the upcoming months affords no basis "to interfere with the [Legislature's] or governor's prerogatives now." *Carter I*, 2011 WL 665408, *2.

*Third*, Plaintiffs contend that, until a redistricting plan is enacted, they are unable to participate in political activities such as declaring their candidacies for legislative office or soliciting support for their candidates of choice. *See* Compl. ¶¶ 14–19, 80–84. But this in no way distinguishes Plaintiffs from New York voters and candidates in prior redistricting cycles, all of whom had to wait until four months or so before the primaries to begin their electoral activity. This visited no cognizable harm on them because there is no right to an *extended*

9

campaign, and thus no basis for snatching from the Legislature's hands its constitutional prerogative to redistrict so long as there is time to do so.  As prior decisions show, three to five months is ample time to campaign.  *See Rodriguez*, 308 F. Supp. 2d at 354–58; *Wolpoff*, 600 N.E.2d at 192.  Indeed, such premature judicial action might well harm voters and candidates: if they begin to campaign in judicially-drawn districts that were subsequently *superseded* by a timely-enacted redistricting plan, this would cause wasted effort and serious confusion.  *See, e.g.*, *Lawyer v. Dep't of Justice*, 521 U.S. 567, 578 n.5 (1997) ("[A federal court's acceptance of] settlement and subsequent judgment do not, of course, prevent state legislatures from redistricting yet again."); *Wise*, 437 U.S. at 540 ("Legislative bodies should not leave their reapportionment tasks to federal courts; but when those with legislative responsibilities do not respond, or the imminence of a state election makes it impractical for them to do so, it becomes the 'unwelcome obligation' of the federal court to devise and impose a reapportionment plan *pending later legislative action*." (emphasis added)); *Rodriguez*, 308 F. Supp. 2d at 358 (vacating court-drawn redistricting plan upon enactment of Legislature's redistricting plan).

*Finally*, Plaintiffs allege that the Legislature may move the upcoming primary from September to June or August 2012.  *See* Compl. ¶ 78.  Plaintiffs, of course, acknowledge that no such action yet has been taken.  *See id.*  And even if the Legislature moves the primary, it still has months to enact a redistricting plan with the four months of lead time federal courts ordinarily have required in impasse suits and that the Legislature has provided in prior redistricting years.  *See, e.g.*, *Rodriguez*, 308 F. Supp. 2d at 354–58; *Wolpoff*, 600 N.E.2d at 192.  In fact, the Legislature's redistricting plan will be timely for an August primary if it is enacted in April, and for a June primary if it is enacted in February.  *See, e.g.*, *Rodriguez*, 308 F. Supp. 2d at 354–58; *Wolpoff*, 600 N.E.2d at 192.  Moreover, the Legislature will select both a primary date

and a redistricting plan—and it can coordinate these decisions to ensure that candidates and voters have sufficient time to participate in the elections. That is precisely what the Virginia General Assembly did in *Carter*, where it moved the Virginia primary and enacted its redistricting plan less than four months before the primary date. *Carter II*, 2011 WL 1637942, *2 & n.2. Plaintiffs' concern that the Legislature may move up the primary date thus does not ripen their premature claims.

## CONCLUSION

There are still approximately nine months until the September 2012 primaries, which gives the Legislature more than ample time to perform its constitutional redistricting function as it has in prior redistricting years. *See Rodriguez*, 308 F. Supp. 2d at 354–58; *Wolpoff*, 600 N.E.2d at 192. The Court should therefore decline Plaintiffs' invitation to interfere with the Legislature's and the Governor's prerogatives at this early juncture by dismissing this suit or, at a minimum, staying any action until the time for legislative redistricting has passed.

Dated: December 12, 2011 Respectfully submitted,

/s/Michael A. Carvin_____
Michael A. Carvin (MC 9266)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001-2113
202/879-3939

Todd R. Geremia (TG 4454)
JONES DAY
222 East 41st Street
New York, NY 10017-6702
212/326-3939

David Lewis (DL 0037)
LEWIS & FIORE
225 Broadway, Suite 3300
New York, NY 10007
212/285-2290

*Attorneys For Defendants Dean G. Skelos, Michael F. Nozzolio, and Welquis R. Lopez*


/s/C. Daniel Chill_____
C. Daniel Chill (CC 6940)
GRAUBARD MILLER
The Chrysler Building
405 Lexington Avenue, 19th Floor
New York, NY 10174
212/818-8800

*Attorney for Defendants Sheldon Silver, John J. McEneny, and Roman Hedges*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 12th day of December, 2011, a true and correct copy of the foregoing was served on the following counsel of record through the Court's CM/ECF system:

Richard Mancino
Daniel Max Burstein
Jeffrey Alan Williams
WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, NY 10019

*Attorneys for Plaintiffs*


Leonard M. Kohen
67 E. 11th Street #703
New York, NY 10003

*Attorney for Defendants John L. Sampson
 and Martin Malave Dilan*

Joshua Pepper
Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271

*Attorney for Defendants Andrew M. Cuomo,
Eric T. Schneiderman, and Robert J. Duffy*


Jonathan Sinnreich
Timothy Hill
SINNREICH KOSAKOFF & MESSINA LLP
267 Carleton Avenue, Suite 301
Central Islip, NY 11722

*Attorneys for Defendant Robert Oaks*


/s/Michael A. Carvin