UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK A. FAVORS, et al. ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case:  1:11-cv-05632-DLI-RLM |
| ) | **ORAL ARGUMENT REQUESTED** |
| ANDREW M. CUOMO, et al. ) | **Date of Service**: January 9, 2012 |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPLY IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR, IN THE ALTERNATIVE, TO STAY THIS CASE**

Defendants Dean G. Skelos, Sheldon Silver, John J. McEneny, Roman Hedges, Michael F. Nozzolio, and Welquis R. Lopez respectfully submit this reply in support of their motion to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, to stay this impasse suit.  Plaintiffs acknowledge the constitutional requirement that this Court provide the New York Legislature "'an adequate opportunity' to complete the [reapportionment] process itself" before taking corrective action toward a judicially drawn redistricting plan.  Memo. of Law in Opp. to Certain Defs.' Mot. to Dismiss or Stay at 11 (quoting *Upham v. Seamon*, 456 U.S. 37, 41 (1982) (quoting *White v. Weiser*, 412 U.S. 783, 794–95 (1973))) (DE 43) ("Pls.' Memo.").  Plaintiffs further request that a final redistricting plan be in place *less* than four months before New York's legislative primaries.  *See id.* at 16 (identifying "March 2012" as "the final deadline" for a redistricting plan for a June primary and April 2012 on "the assumption of an August or September primary").  Indeed, even Plaintiffs concede that this Court's intervention in the Legislature's ongoing redistricting efforts is premature if the primaries are "scheduled for a date later than June 2012."  *Id.* at 18; *see also id.*

1

at 19 ("[U]nder that circumstance, the Court should retain jurisdiction over the case and intervene at such time as it deems appropriate.").

Therefore, at a minimum, the Court should stay Plaintiffs' impasse suit because the Legislature still has plenty of time to enact a redistricting plan before the primaries, which remain scheduled for later than June. Yet Plaintiffs and Defendants John L. Sampson and Martin Malave Dilan ("Senate Minority Defendants") invite the Court's "active intervention" and immediate appointment of a special master to commandeer the Legislature's performance of its constitutionally delegated redistricting duty. *Id.* at 18. This invitation rests on three faulty premises, none of which sustains Plaintiffs' burden to establish that their suit is ripe.

*First*, Plaintiffs' and the Senate Minority Defendants' invocation of the "worst case scenario"—omitted from Plaintiffs' Complaint—that Judge Sharpe may schedule primaries for June ignores the fact that Judge Sharpe has jurisdiction over *only* New York's congressional primaries and not its State Assembly or State Senate primaries, their concession that Judge Sharpe may schedule the congressional primaries for as late as August 18, and the Legislature's sovereign authority over redistricting and the political calendar. *Second*, Plaintiffs' criticism of the four-month rule contradicts their own cited cases and their request that a redistricting plan be finalized *less* than four months before the primaries. *Finally*, Plaintiffs' allegation of a judicially cognizable impasse misstates the facts. Plaintiffs' and the Senate Minority Defendants' repeated references to Governor Cuomo's purported veto threat overlook that Governor Cuomo has eschewed the opportunity to confirm with this Court his alleged intention to veto any and all legislative redistricting, and instead has expressly disclaimed any position on the pending motions to dismiss. Moreover, Plaintiffs and the Senate Minority Defendants misrepresent the progress made by the New York State Legislative Task Force on Demographic Research and

2

Redistricting (LATFOR), which has released its prisoner reallocation data pursuant to an agreement regarding that data's implementation.

The Court therefore should decline Plaintiffs' invitation to step into the Legislature's province at this early juncture based on speculation about how the executive and legislative branches will act in the future, and should dismiss Plaintiffs' suit or, in the alternative, stay it pending the Legislature's failure to timely enact a redistricting plan. If the Court determines that there is any uncertainty as to whether Defendants' Motion should be granted, it should exercise its discretion to refer the Motion to the three-judge panel.

## ARGUMENT

### I. PLAINTIFFS' SUIT IS NOT RIPE FOR THE COURT'S INTERVENTION

Because "the Constitution leaves with the States the primary responsibility for apportionment of their federal congressional and state legislative districts," *Growe v. Emison*, 507 U.S. 25, 34 (1993), the Supreme Court "has repeatedly held that redistricting and reapportioning legislative bodies is a legislative task that federal courts should make every effort not to pre-empt," *Wise v. Lipscomb*, 437 U.S. 535, 539 (1978). Moreover, a claim is not ripe where it rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985).

As Defendants have explained, Plaintiffs have failed to establish that their impasse suit is ripe because the Legislature still has plenty of time to enact a redistricting plan—and the Court is required to delay its redistricting activities as long as possible in deference to the Legislature. *See* Memo. in Support of Certain Defs.' Mot. to Dismiss Pls.' Compl. or, in the Alternative, to Stay This Case at 5–11 (DE 22-1) ("Memo."). Moreover, the Supreme Court today held expedited oral argument in three consolidated Texas cases addressing the power of a federal court to impose redistricting plans on a state legislature, and this Court should await the

3

forthcoming guidance on that question before it embarks on judicial redistricting in this case. *See, e.g.*, *Perry v. Perez*, Nos. 11–713, 11–714, 11–715 (U.S. Sup. Ct. Jan. 9, 2012).

Defendants have shown that a weighty body of law requires this Court to wait as long as possible before intervening in New York's redistricting efforts. *See* Memo. at 5–11. Plaintiffs make little mention of these binding authorities, and no mention of the confusion and harm that result from premature judicial redistricting subsequently superseded by legislative action. Plaintiffs and the Senate Minority Defendants instead offer three arguments to support their contention that their suit is ripe, none of which withstands even minimal scrutiny.

A. **No New York Legislative Primaries Have Been Scheduled For June 2012**

Plaintiffs and the Senate Minority Defendants first depart from the plain allegations of Plaintiffs' Complaint and invoke the "worst case scenario" that another federal court may schedule unspecified New York primaries for June 2012. *See* Pls.' Memo. at 2–4, 13–18; *see* Memo. of Law by Defs. John L. Sampson and Martin Malave Dilan at 8–9 (DE 45) ("Min. Memo."). This scenario is essential to their oppositions because, as Plaintiffs concede, this Court's intervention is premature so long as New York's primaries are "scheduled for a date later than June 2012." Pls.' Memo. at 18. Plaintiffs, however, fail to mention that Judge Sharpe has jurisdiction over *only* New York's primaries for *federal* legislative office, and not its primaries for State Assembly or State Senate. *See* Compl., *United States v. New York*, No. 10-cv-1214 (N.D.N.Y.) (Ex. A); *see also* 42 U.S.C. § 1973ff-1 (setting rules for absentee ballots for "elections for Federal office"). Judge Sharpe's order thus will not change the date of the state legislative primaries, which remain scheduled for September under state law.

Plaintiffs' June congressional primary scenario, moreover, is precisely the kind of "contingent future event[] that may not occur as anticipated, or indeed may not occur at all" that renders Plaintiffs' suit not ripe. *Thomas*, 473 U.S. at 580–81. Plaintiffs and the Senate Minority

4

Defendants concede that Judge Sharpe may schedule the congressional primaries for as late as August 18.  *See* Pls.' Memo. at 14; Min. Memo. at 2, 8.  Moreover, as the Senate Minority Defendants acknowledge, Judge Sharpe's order setting the congressional primary date "is expected in early January."  Aff. of Sen. Martin Malave Dilan ¶ 8 n.2 (DE 46) ("Dilan Aff.").  And Judge Sharpe has expressed his inclination to "pick a [primary] date that's as close to the [September] date [the Legislature] already picked."  *See* Dec. 12, 2011 Hr'g tr. at 27–28, *United States v. New York*, No. 10-cv-1214 (N.D.N.Y.) (Ex. B).  Because New York's legislative primaries remain "scheduled for a date later than June 2012" and Judge Sharpe's order will not change the state legislative primary date, Plaintiffs' claims are not ripe by their own admission, and Defendants are entitled to dismissal or stay of this suit.  Pls.' Memo. at 18; *see also id.* at 18–19 (urging that "under th[e] circumstance" of primaries scheduled for later than June, "the Court should retain jurisdiction over the case and intervene at such time as it deems appropriate").

Plaintiffs' follow-on argument that the mere possibility of a June congressional primary ripens their claims because they desire to engage in extensive pre-election political activities (*see* Pls.' Memo. at 16–17) fares no better.

*First,* as a purely practical matter, any judicial drawing of plans at *any* time *before* the Legislature can redistrict might well obstruct and undo Plaintiffs' preferred early politicking.  If the Legislature enacts plans up to the "eleventh hour," this will replace the court-drawn plans, thus rendering moot any electioneering under the judicial plan—a recipe for wasted resources and irreparable voter confusion to be avoided at all costs.

*Second*, as a legal matter, Plaintiffs' only alleged legal injury is voting in districts that are malapportioned under the 2010 Census, not the loss of an extended campaign.  *See* Compl. ¶¶ 106–158; *see also Reynolds v. Sims*, 377 U.S. 533, 583–84 (1964); New York Const. art. III,

5

§§ 4–5. In fact, there is no right to an extended campaign, and prior redistricting cycles demonstrate three to five months is ample time to campaign. *See Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 354–58 (S.D.N.Y. 2004) (per Walker, C.J.; Koeltl, J.; and Berman, J.), *aff'd* 543 U.S. 997 (2004); *Puerto Rican Legal Def. & Educ. Fund, Inc. v. Gantt*, 796 F. Supp. 681, 684 (E.D.N.Y. 1992) ("*PRLDEF*") (per Pratt, C.J.; Martin, J.; and Johnson, J.); *Wolpoff v. Cuomo*, 600 N.E.2d 191, 192 (N.Y. 1992). Plaintiffs recognize as much because they request that the redistricting plans be finalized less than four months before the primaries. *See* Pls.' Memo. at 16. Thus, that candidates and voters may have engaged in political activities for a longer period in 2010, a *non*-redistricting year (*see id.* at 5), furnishes no basis to snatch from the Legislature's hands its constitutional prerogative to redistrict *this* year so long as there is time to do so.

*Finally*, Plaintiffs' allegation of "extreme[] prejudic[e]" if the congressional primaries ultimately are scheduled for June after the start of the "Political Calendar" in March (*see id.* at 5, 16) is insufficient to create a ripe controversy and purely speculative. Ripeness cannot be founded on speculation, especially speculation about a worst-case scenario. Moreover, Plaintiffs' speculation here is unusually implausible and unnecessary, because Judge Sharpe's ruling will issue in early January (*see* Dilan Aff. ¶ 8 n.2), and he has already publicly expressed his inclination toward scheduling the congressional primaries as close as possible to the current September date. In any event, the political calendar is hardly static: the Legislature can change the pre-election campaign deadlines to complement the primary date and to preserve sufficient time to campaign. *See, e.g.*, Memo. at 10–11; *Carter v. Virginia State Bd. of Elections*, No. 3:11-cv-00030, 2011 WL 1637942 at 2 n.2 (W.D. Va. Apr. 29, 2011). Plaintiffs' hypothetical harm of a June congressional primary scheduled after a March start of the political calendar simply is too remote to warrant this Court's action. *See Thomas*, 473 U.S. at 580–81.

### B. Federal Courts Do Not Take Steps Toward Judicial Redistricting Until Four Months Before The Primary Date

Even if Plaintiffs could establish that June congressional primaries are more than speculative, their claims still would not be ripe for this Court's intervention. Prior redistricting cases make clear that federal courts do not step into a state's purview and begin taking steps toward drawing redistricting plans until approximately four months before the next primaries. *See* Memo. at 7–11. This four-month rule comports with the Supreme Court's directive that "[a]bsent evidence that [a state] will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." *Growe*, 507 U.S. at 34; *id.* at 33 ("In the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative or judicial branch, has begun to address that highly political task itself."). And the rule prevents the waste of resources and harm to voters and candidates that result when a judicially drawn plan is superseded by legislative enactment. *See* Memo. at 9–10.

Plaintiffs make only passing mention of the Supreme Court's express guidance that federal courts should defer as long as possible to state redistricting efforts, and do not even address the confusion and waste that would result if this Court's premature imposition of a redistricting plan is later superseded by a legislative enactment. *See, e.g.*, Pls.' Memo. at 11–14. Instead, Plaintiffs invite the Court to disregard the four-month rule as "made-up" and "arbitrar[y]." *Id.* at 11–12; *see also* Min. Memo. at 7-8. But Plaintiffs' own cases recognize that federal courts should wait until "'the 'eleventh hour' is upon [them], if indeed . . . not already passed" before taking steps toward drawing their own redistricting plans. *Id.* at 11 (quoting *Rodriguez v. Pataki*, 207 F. Supp. 2d 123, 125 (S.D.N.Y. 2002) (per Walker, C.J.; Koeltl, J.; and Berman, J.)). In fact, Plaintiffs' cases—many of which Defendants cited in their Motion (*see*

7

Memo. at 7–8)—all recognize that federal courts wait until less than "five months before the primary election" before commencing their redistricting efforts. Pls.' Memo. at 10–13.[1] And, of course, Plaintiffs' request that a final redistricting plan be in place *less* than four months before the primaries (*id.* at 16) belies their objection to the four-month rule.

Plaintiffs' own case law and requested relief thus underscore that the Court should follow the well-established practice and, at a minimum, wait until four months before the primaries to begin steps toward judicial redistricting. Yet Plaintiffs offer five arguments for disregarding the four-month rule, all of which fail. *First*, Plaintiffs' contention that courts "have maintained jurisdiction over actions *filed*" up to 19 months before a primary (*id.* at 9 (emphasis added)) misses the point: the issue is not whether Plaintiffs filed their Complaint on an appropriate date, but rather whether the time for this Court's pretermission of the Legislature's redistricting efforts has arrived. *Second*, Plaintiffs' concern that a "Special Master" may have to "complete his work in only two weeks" (*id.* at 11) ignores that two weeks was plenty of time for the special master to draw plans in 1992 and 2002, *see PRLDEF*, 796 F. Supp. 2d at 684; *Rodriguez*, 207 F. Supp. at 125, and that technological advances over the intervening decades will make any judicial redistricting faster this year.

*Third*, Plaintiffs' concern about leaving sufficient time to obtain preclearance under section 5 of the Voting Rights Act a non-issue since, as prior history shows, the Legislature will have ample time to secure preclearance within four months of the election and, if needed, the

---

[1] *See also Rodriguez*, 207 F. Supp. at 125 (appointing special master approximately four-and-a-half months before primaries) (cited at Pls.' Memo. at 11); *Flateau v. Anderson*, 537 F. Supp. 257, 262 (S.D.N.Y. 1982) (stating that it would commence judicial redistricting approximately four-and-a-half months before primaries) (cited at Pls.' Memo. at 12); *PRLDEF*, 796 F. Supp. at 684 (appointing special master approximately four months, and approving judicial redistricting plan approximately three months, before primary election) (cited at Pls.' Memo. at 12); *Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 867–68 (E.D. Wisc. 2001) (staying impasse suit until February of election year) (cited at Pls.' Memo. at 10–11).

Court "can adopt a plan without preclearance." Pls.' Memo. at 16.

*Fourth*, Plaintiffs' bemoaning of the current pace of their suit (*id.* at 18) is difficult to square with their serial consent to extend the deadline for Governor Cuomo's and the Senate Minority Defendants' responsive pleadings (*see, e.g.*, DE 47). *Finally*, Plaintiffs' contention that the Court's "pressure" may "facilitate the legislative process" (Pls.' Memo. at 7, 15) ignores that in the prior cases they cite, courts did not take steps toward judicial redistricting—and, thus, apply "pressure" to the Legislature—until approximately four months before the primaries. *Id.* at 6–8 (discussing *PRLDEF*, 796 F. Supp. at 684 and *Rodriguez*, 308 F. Supp. 2d at 355).

In short, Plaintiffs identify no basis for this Court to discard the four-month rule. Thus, even if Plaintiffs could establish a sufficient likelihood of a June congressional primary—which they cannot, *see supra* Part I.A—this Court still should delay commencing its own redistricting efforts until late February at least. *See* Memo. at 10–11. Even then, the Court can complete any judicial redistricting by Plaintiffs' March "target date" for the "worst case scenario" of a late June congressional primary and unchanged political calendar. Pls.' Memo. at 15–16.

### C. There Is No Judicially Cognizable Impasse In The Legislature's Ongoing Redistricting Efforts

Plaintiffs and the Senate Minority Defendants finally ask the Court to depart from the four-month rule based on allegations that the "political process is at an impasse." Pls.' Memo. at 15; *see* Min. Memo. at 9–10. But those allegations do not establish a political impasse at all, much less an impasse warranting "prompt[]" appointment of a special master. Pls.' Memo. at 7.

*First*, Plaintiffs' and the Senate Minority Defendants' repeated references to Governor Cuomo's purported veto threat ignore that Governor Cuomo has had every opportunity to confirm with this Court his alleged intention to veto any and all legislative redistricting and his view regarding the urgency of this case. But instead of validating Plaintiffs' allegations of an

9

automatic veto and an urgent need for judicial action, Governor Cuomo "take[s] no position on the[] pending motions" to dismiss. *See* Dec. 30, 2011 Letter to Court at 1 (DE 47). Moreover, the very "promise[s]" that Plaintiffs cite demonstrate that Governor Cuomo will not exercise his veto if there is "'an agreement on permanent reform of the redistricting process.'" Pls.' Memo. at 4 (quoting Compl. ¶¶ 71). Plaintiffs provide no reason for the Court to interfere with Governor Cuomo's executive prerogative to act after he has seen the Legislature's redistricting plan and to preemptively assume a veto to non-existent legislation that he may never exercise.

*Second*, Plaintiffs' allegation that LATFOR's "only progress" toward implementing the prisoner reallocation law has been to hold "its first round of public hearings" (*id.* at 4) is simply wrong. On January 5, LATFOR released the prisoner reallocation data that Plaintiffs and the Senate Minority Defendants have heralded as a significant aspect of LATFOR's redistricting work (*see* LATFOR 2010 Amended Population (Prisoner Adjustment) (Ex. C); *see also* Pls.' Memo. at 4–5; Min. Memo. at 9), and it has scheduled a public meeting to discuss and ratify that data for January 10 (see Notice of Public Meeting (Ex. D)). Moreover, the state trial court did not pass on the prisoner reallocation law's constitutionality until December 1, 2011—and, as the Senate Minority Defendants recognize, LATFOR shortly thereafter reached an agreement regarding the implementation of the law under the state-court judgment. *See* Dilan Aff. ¶ 7.

## **CONCLUSION**

Because there is ample time for the Legislature to perform its constitutional redistricting function, this Court should dismiss or stay this case. If the Court finds any uncertainty in Defendants' right to this relief, it should exercise its discretion to refer Defendants' Motion to the three-judge court. *See, e.g.*, *Kalson v. Paterson*, 542 F.3d 281, 287–88 (2d Cir. 2008).

Dated: January 9, 2012				Respectfully submitted,


							/s/Michael A. Carvin_____
							Michael A. Carvin (MC 9266)
							JONES DAY
							51 Louisiana Avenue, NW
							Washington, DC 20001-2113
							202/879-3939

							Todd R. Geremia (TG 4454)
							JONES DAY
							222 East 41st Street
							New York, NY 10017-6702
							212/326-3939

							David Lewis (DL 0037)
							LEWIS & FIORE
							225 Broadway, Suite 3300
							New York, NY 10007
							212/285-2290

							*Attorneys For Defendants Dean G. Skelos, Michael F. Nozzolio, and Welquis R. Lopez*


							/s/C. Daniel Chill_____
							C. Daniel Chill (CC 6940)
							GRAUBARD MILLER
							The Chrysler Building
							405 Lexington Avenue, 19th Floor
							New York, NY 10174
							212/818-8800

							*Attorney for Defendants Sheldon Silver, John J. McEneny, and Roman Hedges*

11

## CERTIFICATE OF SERVICE

I hereby certify that, on this 9th day of January, 2012, a true and correct copy of the foregoing was served on the following counsel of record through the Court's CM/ECF system:

Richard Mancino
Daniel Max Burstein
Jeffrey Alan Williams
WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, NY 10019

*Attorneys for Plaintiffs*

Leonard M. Kohen
67 E. 11th Street #703
New York, NY 10003

Jeffrey M. Wice
P.O. Box 42442
Washington, D.C. 20015

*Attorney for Defendants John L. Sampson and Martin Malave Dilan*

Harold D. Gordon
Couch White, LLP
540 Broadway
Albany, NY 12201

*Attorney for Defendant Brian M. Kolb*

James D. Herschlein
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022

*Attorney for Proposed Intervenors Lee, Chung, Hong, and Lang*

Joshua Pepper
Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271

*Attorney for Defendants Andrew M. Cuomo, Eric T. Schneiderman, and Robert J. Duffy*

Jonathan Sinnreich
Timothy Hill
SINNREICH KOSAKOFF & MESSINA LLP
267 Carleton Avenue, Suite 301
Central Islip, NY 11722

*Attorneys for Defendant Robert Oaks*

Joan P. Gibbs
Center for Law and Social Justice
1150 Carroll Street
Brooklyn, NY 11225

*Attorney for Proposed Intervenors Drayton, Ellis, Forrest, Johnson, Woolley, and Wright*

Jackson Chin
LatinoJustice PRLDEF
99 Hudson Street, 14th Floor
New York, NY 10013

*Attorney for Proposed Intervenors Ramos, Chavarria, Heymann, Martinez, Roldan, and Tirado*

/s/Michael A. Carvin