# WILLKIE FARR & GALLAGHER LLP

RICHARD MANCINO
212 728 8243
rmancino@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

January 30, 2012

The Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  <u>Favors v. Cuomo, 11-cv-5632 (DLI) (RLM)</u>

Dear Judge Irizarry:

      We write on behalf of Plaintiffs in the above-referenced action to advise the Court of a recent development in *United States v. State of New York*, No. 10-cv-01214, which is pending before Judge Sharpe in the Northern District of New York. On Friday, Judge Sharpe ruled in a Memorandum-Decision and Order, a copy of which is enclosed, that New York's congressional primary election for 2012 shall take place on June 26. (Order at 8.) This represents the *earliest* primary election date contemplated by the parties to this action and requires that the candidate petitioning period begin on March 20, 2012. *See* N.Y. Elec. Law § 6-134(4).

      Plaintiffs believe that, as a result of this development, time is of the essence. For the reasons stated in Plaintiffs' memoranda in opposition to the pending motions to dismiss (*see* Opp. to Skelos et al. Mot. to Dismiss [Dkt. No. 43] at 15-19; Opp. to Kolb & Oaks Mots. to Dismiss [Dkt. No. 61] at 21), the existence of this June primary date reinforces the ripeness of this action. Given the abbreviated Election Calendar that will now become operative, Plaintiffs further believe that a three-judge panel, convened pursuant to 28 U.S.C. § 2284, will soon need to begin the Court-supervised congressional redistricting process. Upon the establishment of a panel, Plaintiffs intend to move for the appointment of a Special Master to assist the Court in drawing district lines.

Respectfully yours,

*/s/ Richard Mancino*

Richard Mancino

Enclosure

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

             Plaintiff,             1:10-cv-1214
                                             (GLS/RFT)
    v.

STATE OF NEW YORK et al.,

             Defendants.

---

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFF:**
HON. RICHARD J. HARTUNIAN      BARBARA D. COTTRELL
United States Attorney                  THOMAS SPINA, JR.
445 Broadway                              Assistant U.S. Attorneys
218 James T. Foley U.S. Courthouse
Albany, NY 12207-2924

United States Dept. of Justice        RICHARD A. DELLHEIM, ESQ.
Civil Rights Division                   RISA A. BERKOWER, ESQ.
950 Pennsylvania Ave. NW
Washington, D.C. 20530

**FOR THE DEFENDANTS:**
*State of New York*
HON. ERIC T. SCHNEIDERMAN       JEFFREY M. DVORIN
New York State Attorney General     BRUCE J. BOIVIN
Albany Department of Law             Assistant Attorney Generals
The Capitol
Albany, NY 12224

*Board of Elections*
New York State Bd. of Elections     KIMBERLY A. GALVIN, ESQ.
Office of Special Counsel              PAUL M. COLLINS, ESQ.
40 Steuben Street

Albany, NY 12207-1650

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Nothing is more critical to a vibrant democratic society than citizen participation in government through the act of voting. It is unconscionable to send men and women overseas to preserve our democracy while simultaneously disenfranchising them while they are gone. To some extent, that is precisely what New York has done. Having had ample opportunity to correct the problem, it has failed to find the political will to do so. While matters of comity ordinarily counsel federal courts to refrain from becoming embroiled in state election schemes, New York has left the court no choice. If federally-guaranteed voting rights are to be protected, the court must act.

The Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) of 1986, 42 U.S.C. §§ 1973ff to 1973ff-7, as amended by the Military and Overseas Voter Empowerment (MOVE) Act, Pub. L. No. 111-84, subtitle H, §§ 575-589, 123 Stat. 2190, 2318-2335 (2009) protects

2

the federally-guaranteed voting rights of New York's military and overseas voters. Since at least 2010, New York has recognized that its voting laws are not compliant with UOCAVA's federal mandate. Accordingly, the State entered a Consent Decree on October 19, 2010. (*See* Dkt. No. 9.) Among other things, it agreed to amend its law to ensure future compliance with UOCAVA and agreed to take certain steps to correct UOCAVA violations. (*See* Consent Decree Terms, *id.*) Furthermore, the State transmitted additional absentee ballots after October 1, 2010—that were unknown to the court at the time it entered the Decree—which constituted additional UOCAVA violations that fell beyond the scope of the relief ordered in the Consent Decree. (*See id.*)

Now pending is the United States' motion seeking permanent and supplemental relief to ensure New York's primary election date complies with UOCAVA and to address the additional violations found subsequent to the Decree. (*See* Dkt. No. 16.) For the reasons that follow, the motion is granted.

## II. <u>Background</u>

On October 12, 2010, the United States filed this action to remedy violations of UOCAVA. UOCAVA guarantees active duty members of the

3

uniformed services (and their spouses and dependents), and United States citizens residing overseas, the right "to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. § 1973ff-1(a)(1). New York is responsible for complying with UOCAVA and ensuring that validly-requested absentee ballots are sent to UOCAVA voters in accordance with its terms. 42 U.S.C. §§ 1973ff-1 & 1973ff-6(6).

New York's statutorily-prescribed non-presidential federal primary election date prevents it from complying with UOCAVA's ballot transmission deadline of forty-five (45) days prior to a federal general election. On August 27, 2010, the Secretary of Defense granted New York a hardship waiver for the November 2, 2010 federal general election on that basis. The waiver exempted New York from complying with UOCAVA's ballot transmission deadline of September 18, 2010. Thus, the waiver extended New York's UOCAVA ballot transmission deadline until October 1, 2010. The waiver was granted based in part upon New York's representations that all ballots would be transmitted by October 1, 2010.

However, New York failed to transmit all UOCAVA ballots by October 1, 2010, prompting the United States to contact State officials. During these communications, New York represented that at least thirteen (13)

4

counties transmitted UOCAVA ballots after October 1, 2010, but stated that all UOCAVA ballots had been transmitted no later than October 10, 2010.

On October 19, 2010, and based on these representations, this court entered the Decree to remedy these UOCAVA violations. (*See* Dkt. No. 9.) The Decree required New York to accept as valid all UOCAVA ballots that were properly executed and postmarked or showing a date of endorsement of receipt by another agency of the United States government by November 1, 2010, and that were received by New York's election officials by November 24, 2010 and otherwise valid. The Decree left open the issue of additional relief should New York fail to take necessary measures to ensure future UOCAVA compliance. The Decree also contemplated supplemental relief should additional UOCAVA violations be discovered.

### III. Discussion

#### A.     Primary Election Date

Determining an UOCAVA-complaint date for New York's 2012 primary election requires consideration of a multitude of positions, all of which were presented by New York. While the Election Commissioners' Association (ECA), the State Senate, which was granted amicus status,

5

and the State Assembly[1] expressed their views, the Governor did not take a position.

Specifically, the ECA and State Assembly urge the court to move the September Primary to the fourth Tuesday in June in order to reliably meet the mandates of UOCOVA. The ECA contends that an August primary election does not provide sufficient time to deal with the foreseeable obstacles in certifying a primary election result or the ballot. Thus, ECA claims that an August election would potentially disenfranchise military and overseas voters.

On the other hand, the State Senate seeks an August primary date because it would be the least disruptive to the current, and long-standing, September primary system. In so arguing, the Senate urges the court to consider the economic implications of the primary date, the hardship of candidates to obtain signatures in the winter months, and that June is at the end of the legislative session. More specifically, the Senate points out that a June primary would force its members to have to weigh their elected responsibilities against the need for political presence in their district.

Having considered the parties submissions, and considering their

---

[1] Not a party to this litigation and did not seek amicus status.

contentions with care, the court concludes that the fourth Tuesday in June for the non-presidential primary is in the best interest of the State. However, this decision by no means precludes New York from reconciling their differences and selecting a different date, so long as the new date fully complies with UOCAVA. The court fully recognizes that a permanent primary date is best left to New York, but has acted as it must to preserve federally protected voting rights.

**B.   Additional UOCAVA violations**

Following the entry of the Decree, the court has been informed that at least thirty-six (36) of New York's sixty-two (62) counties transmitted UOCAVA ballots after October 1, 2010. Furthermore, at least thirteen (13) counties transmitted UOCAVA ballots after the October 10, 2010, transmission date stipulated in the Decree. Since there appears to be no dispute on the subsequent violations, the court grants the relief sought by the United States to determine the extent of the UOCAVA violations and the proposed remedy to rectify those violations.

## IV. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the United States' motion for permanent and

7

supplemental relief (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that:

(1) Notwithstanding any current state law or administrative procedure to the contrary, New York shall conduct its 2012 non-presidential federal primary election on a date no later than 35 days prior to the 45-day advance deadline set by the MOVE Act for transmitting ballots to the State's military and overseas voters, *i.e.*, at least 80 days before the November 6, 2012 federal general election. In 2012, that date shall be June 26, 2012.

(2) In subsequent even-numbered years, New York's non-presidential federal primary date shall be the fourth Tuesday of June, unless and until New York enacts legislation resetting the non-presidential federal primary election for a date that complies fully with all UOCAVA requirements, and is approved by this court.

(3) For the purposes of determining the date and time for performing any act prescribed by any law and/or administrative procedure applicable to New York's non-presidential federal

       primary, such non-presidential federal primary election date shall be deemed to be held on the dates provided in paragraphs (1) and (2) above.

(4)     The New York State Board of Elections ("NYSBOE") shall, within five (5) days of this Order, provide the court with a proposed non-presidential federal primary election calendar for all statutory and administrative election-related deadlines based upon the non-presidential federal primary election date set by the court. The United States shall have five (5) days to respond. Once approved by the court, the NYSBOE shall have ten (10) days to take all steps necessary to adopt and promulgate this non-presidential federal primary calendar.

(5)     Having promulgated an approved non-presidential federal primary election calendar, the NYSBOE shall take all steps necessary to ensure that such non-presidential federal primary election calendar is implemented by and complied with by local boards of election. To this end, and to ensure future UOCAVA compliance, the parties shall confer as to an appropriate schedule for defendants to provide pre-election reporting to the

United States with respect to the State's UOCAVA compliance.

(6) Within fourteen (14) days of this Order, the parties, having conferred, shall provide the court with a list of those county boards of elections, if any, to be re-surveyed concerning UOCAVA ballots from the 2010 federal general election, along with an explanation of any differences between the parties' proposals.

(7) If necessary and appropriate, the court will determine the list of counties to be re-surveyed. Within seven (7) days of that determination, the NYSBOE shall transmit the attached questionnaire concerning ballots transmitted to voters in the 2010 federal general election pursuant to UOCAVA to each county board of elections on that list with instructions for the chief official or officials of each county board to certify the accuracy of the board's responses to the questionnaire.

(8) Defendants shall instruct each affected county board of elections that each completed questionnaire must be returned to the NYSBOE within thirty (30) days of its receipt. After consulting with counsel for the United States, the NYSBOE

      shall file all completed questionnaires with this court within sixty (60) days of this Order, along with an accurate summary of the survey results, and, if necessary, an explanation as to why the survey results are incomplete. The United States may respond to this filing within ten (10) days. This court retains jurisdiction to take all appropriate steps to ensure the completeness and accuracy of the information provided by defendants and the county boards of elections.

(9) After the actions in paragraphs (7) and (8) above are complete, defendants shall ensure that local election officials in New York State take such steps as are necessary to count as validly-cast ballots in the November 2, 2010 federal general election all those ballots cast for federal offices, including Federal Write-in Absentee Ballots, requested up to and including October 10, 2010 and transmitted to overseas and military voters after that date but received by such election officials after November 24, 2010, so long as such ballots are executed and postmarked, or show a dated endorsement of receipt by another agency of the United States government (or in the case of military voters, are

11

signed and dated by the military voter and one witness thereto) by November 1, 2010 and are otherwise valid under New York law.

(10) Within twenty (20) days of the completion of the actions required by paragraphs (7)-(9) above, defendants shall, after consulting with the United States, present a plan to the court detailing the procedures it will employ to count such ballots and certify the votes for federal offices. Defendants shall conclude ballot counting and recertification of all affected ballots within thirty (30) days after the court approves the ballot counting and recertification plan.

(11) Defendants shall take all reasonable steps to notify all affected voters of the terms of this Order and that their votes were counted in the 2010 federal general election.

(12) Defendants shall file a report with this court, in a format to be agreed upon by the parties, no later than five (5) days following the completion of any recertification process, detailing the number of UOCAVA absentee ballots, by county, that meet the conditions of this Order and that have been counted for the

> November 2, 2010 federal general election.  The report will set forth the following information, by county, categorized by absent uniformed services voters with APO/FPO addresses or non-US street addresses; uniformed services voters at a street address within the US; and overseas civilian voters:
>
> a.   The number of absentee ballots requested by UOCAVA voters between October 1, 2010 and October 10, 2010;
>
> b.   The number of absentee ballots requested by UOCAVA voters between October 1, 2010 and October 10, 2010 but sent to such voters after October 10, 2010;
>
> c.   The number of absentee ballots identified in subparagraph (b) that were received from UOCAVA voters later than the close of business on November 24, 2010 and rejected solely for that reason; and
>
> d.   The number of absentee ballots that, pursuant to this Order, have been counted and included in recertified election totals.
>
> (13) This court shall retain jurisdiction to ensure additional relief as appropriate; and it is further

13

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 27, 2012
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court

## Questionnaire

County: _____

Instructions: Each New York county board of elections must answer the following questions. The chief official of the board must sign the responses to these questions and attest to their accuracy under penalty of perjury. Responses must be submitted to the New York State Board of Elections within 30 days of receiving this survey. Please attach additional sheets of paper if necessary to respond completely to each question. All responses will be filed by the State with the U.S. District Court for the Northern District of New York in connection with United States v. New York, et al., No. 1:10-CV-1214 (GLS/RFT) (N.D.N.Y. filed Oct. 12, 2010).

Part I: UOCAVA Ballot Requests

1. Please provide the number of UOCAVA ballot requests received by your county prior to September 18, 2010: _____.

2. Please provide the number of UOCAVA ballot requests received by your county between September 18, 2010 and October 1, 2010: _____.

3. Please provide the number of UOCAVA ballot requests received by your county between October 1, 2010 and October 10, 2010: _____.

4. Please provide the number of UOCAVA ballot requests received by your county after October 10, 2010: _____.

Part II: UOCAVA Ballot Transmittals

1. Please provide the number of UOCAVA ballots that were transmitted to voters (including by electronic transmission) by October 1, 2010: _____.

2. Please provide the number of UOCAVA ballots that were transmitted to voters (including by electronic transmission) between October 1, 2010

15

and October 10, 2010: _____.

3. Please provide the number of UOCAVA ballots that were transmitted to voters (including by electronic transmission) after October 10, 2010: _____.

a. If ballots were transmitted after October 10, 2010, please provide the following:

i. The number of UOCAVA ballots transmitted after October 10, 2010 that were requested before October 10, 2010: _____.

ii. The number of UOCAVA ballots transmitted after October 10, 2010 that were requested after October 10, 2010: _____.

Part III: UOCAVA Ballots Returned to the County

1. Please provide the number of UOCAVA ballots received by the county prior to November 2, 2010: _____.

2. Please provide the number of UOCAVA ballots received by the county between November 2, 2010 and November 24, 2010: _____.

3. Please provide the number of UOCAVA ballots received by the county after November 24, 2010: _____.

Part IV: Rejected UOCAVA Ballots

1. Please provide: a.) the number of UOCAVA ballots that were received prior to November 2, 2010 that were rejected and not counted: _____; and b.) the reason(s) for rejection of each of those ballots: _____

2. Please provide: a.) the number of UOCAVA ballots that were

received between November 2, 2010 and November 24, 2010 that were rejected and not counted: _____; and b.) the reason(s) for rejection of each of those ballots:

_____
_____

3.   Please provide the number of UOCAVA ballots that were received after November 24, 2010 that were rejected and not counted: _____.

a.   Were any ballots received after November 24, 2010 requested by October 10, 2010 and transmitted to the voter after that date? _____.

i.   If yes, please provide the number of such ballots: _____.

ii.   If yes, please provide the number of such ballots that were not counted only because they were received after November 24, 2010: _____.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Signature:

_____

Printed name:

_____

Title:

_____

Date: _____

17