UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
MARK A. FAVORS, HOWARD LIEB, LILLIE H.          :
GALAN, EDWARD A. MULRAINE, WARREN               :
SCHREIBER, and WEYMAN A. CAREY,                 :
                                                :
                    Plaintiffs,                 :
                                                :
DONNA KAYE DRAYTON, EDWIN ELLIS, AIDA           :          **MEMORANDUM AND ORDER**
FORREST, GENE A. JOHNSON, JOY WOOLLEY,          :
SHEILA WRIGHT, LINDA LEE, SHING CHOR            :
CHUNG, JULIA YANG, JUNG HO HONG, JUAN           :
RAMOS, NICK CHAVARRIA, GRACIELA HEYMANN, :
SANDRA MARTINEZ, EDWIN ROLDAN,                  :
MANOLIN TIRADO, LINDA ROSE, EVERET MILLS,       :
ANTHONY HOFFMAN, KIM THOMPSON-WEREKOH, :
CARLOTTA BISHOP, CAROL RINZLER,GEORGE           :
STAMATIADES, JOSEPHINE RODRIGUEZ, and           :
SCOTT AUSTER,                                   :
                                                :          **DOCKET #11-cv-5632**
                    Intervenor Plaintiffs,      :          **(RR)(GEL)(DLI)(RLM)**
                                                :
              -against-                         :
                                                :
ANDREW M. CUOMO, as Governor of the State of New :
York, ROBERT J. DUFFY, as President of the Senate of :
the State of New York, DEAN G. SKELOS, as Majority :
Leader and President Pro Tempore of the Senate of the :
State of New York, SHELDON SILVER, as Speaker of :
the Assembly of the State of New York, JOHN L.   :
SAMPSON, as Minority Leader of the Senate of the State :
of New York, BRIAN M. KOLB, as Minority Leader of :
the Assembly of the State of New York, the NEW  YORK :
STATE LEGISLATIVE TASK FORCE ON                 :
DEMOGRAPHIC RESEARCH AND APPORTIONMENT :
("LATFOR"), JOHN J. McENENY, as Member of       :
LATFOR, ROBERT OAKS, as Member of LATFOR,       :
ROMAN HEDGES, as Member of LATFOR, MICHAEL :
F. NOZZOLIO, as Member of LATFOR, MARTIN        :
MALAVÉ DILAN, as Member of LATFOR, and          :
WELQUIS R. LOPEZ, as Member of LATFOR,          :
                                                :
                    Defendants.                 :
---------------------------------------------------------------------x

1

**REENA RAGGI,** *United States Circuit Judge*,
**GERARD E. LYNCH,** *United States Circuit Judge*,
**DORA L. IRIZARRY,** *United States District Judge*:

On November 17, 2011, Mark A. Favors, Howard Leib, Lillie H. Galan, Edward A. Mulraine, Warren Schreiber, and Weyman A. Carey (collectively, "Plaintiffs")[1] filed this action against Andrew M. Cuomo, as Governor of the State of New York, Eric T. Schneiderman, as Attorney General of the State of New York,[2] Robert J. Duffy, as President of the Senate of the State of New York, Dean G. Skelos, as Majority Leader and President *Pro Tempore* of the Senate of the State of New York, Sheldon Silver, as Speaker of the Assembly of the State of New York, John L. Sampson, as Minority Leader of the Senate of the State of New York, Brian M. Kolb, as Minority Leader of the Assembly of the State of New York, the New York State Legislative Task Force on Demographic Research and Reapportionment ("LATFOR"), John J. McEneny, as a member of LATFOR, Robert Oaks, as a member of LATFOR, Roman Hedges, as a member of LATFOR, Michael F. Nozzolio, as a member of LATFOR, Martin Malavé Dilan, as a member of LATFOR, and Welquis R. Lopez, as a member of LATFOR (collectively "Defendants").

The Complaint alleges that the current New York State legislative and congressional districts, which were enacted in 2002, are unconstitutional due to the population changes reflected in the 2010 census results and that the state's legislative redistricting process is at an impasse.

---

[1] The following four groups of individuals subsequently filed motions to intervene in this action: (i) Donna Kaye Drayton, Edwin Ellis, Aida Forrest, Gene A. Johnson, Joy Woolley, and Sheila Wright; (ii) Linda Lee, Shing Chor Chung, Julia Yang and Jung Ho Hong; (iii) Juan Ramos, Nick Chavarria, Graciela Heymann, Sandra Martinez, Edwin Roldan, and Manolin Tirado; and (iv) Linda Rose, Everet Mills, Anthony Hoffman, Kim Thompson-Werekoh, Carlotta Bishop, Carol Rinzler, George Stamatiades, Josephine Rodriguez, and Scott Auster (collectively "Intervenor Plaintiffs").  Intervenor Plaintiffs' motions to intervene were granted as unopposed on February 14 and 21, 2012.

[2] On December 28, 2011, Plaintiffs voluntarily dismissed all claims against Eric T. Schneiderman without prejudice.  The dismissal was granted on January 10, 2012.

(Compl. ¶ 114.)  The particular import of the 2010 census is that New York will lose two seats in the United States House of Representatives. Thus, if the current congressional district map is used, none of New York's representatives will be seated in the next Congress, resulting in a disenfranchisement of the people of the state.  (*Id.* ¶ 129.)  Plaintiffs allege that the current electoral districts thus violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 2 of the United States Constitution and Sections 4 and 5 of Article III of the New York State Constitution.  (*Id.* ¶¶ 106-42.)[3]

Defendants Dean G. Skelos, Sheldon Silver, John J. McEneny, Roman Hedges, Michael F. Nozzolio, Welquis R. Lopez, Brian M. Kolb, and Robert Oaks (collectively "Moving Defendants") filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on ripeness and standing grounds.  Plaintiffs and defendants State Senator Dilan and State Senator Sampson opposed the motions.  For the reasons set forth below, the motions to dismiss are denied.

---

[3] The Complaint further alleges that, in using population statistics that still count prison inmates living in the communities in which the prisons are located, instead of properly basing the figures on the prisoners' last known residences, LATFOR has violated New York's "Prisoner Reallocation Law" of 2010, N.Y. Corr. L. § 71(8) (McKinney 2012), and Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, insofar as the prisoner reallocation law was pre-cleared by the Department of Justice.  (*See* Compl. ¶¶ 143-55.)  A group of plaintiffs, including various state senators, brought an action in New York State Supreme Court, Albany County, challenging the constitutionality of the law.  On December 1, 2011, the trial court held the law was constitutional. *See Little v. LATFOR*, No. 2310/2011 (N.Y. Sup. Ct., Albany Cnty. Dec. 1, 2011).  The plaintiffs appealed the decision to the New York State Court of Appeals but, on February 14, 2012, the court denied leave to appeal to that court and *sua sponte* transferred the appeal to the Appellate Division, Third Department, where it still is pending.  *Little v. LATFOR*, No. 2310/2011 (N.Y. Ct. of App. Feb. 14, 2012).  Because LATFOR adopted the amended population data counting prisoners only at their home residences on January 10, 2012, on January 30, 2012, Plaintiffs here voluntarily dismissed, without prejudice, their claims relating to prisoner allocation.  (Dkt. Entry 66.)  On February 1, 2012, the Court granted the voluntary dismissal.  As a result, this claim is no longer before the Court and it is not discussed further herein.

## I.    BACKGROUND

Plaintiffs are politically active registered voters living throughout the State of New York, one of whom is a prospective candidate for political office.  (Compl. ¶¶ 14-19.)  Plaintiffs bring this action against Defendants in their official capacities based on Defendants' involvement in drawing congressional and state legislative electoral districts.  (*Id.* ¶¶ 20-28.)

Pursuant to Sections 4 and 5 of Article III of the New York State Constitution, after each decennial census, the New York State Senate and Assembly districts must be readjusted according to the shifts in population during the previous ten years, such that each district contains an equal number of inhabitants to the extent possible.  The United States Constitution also requires each state to redraw their congressional districts after each federal census.  (*Id.* ¶¶ 35-36.)

In New York State, the Legislature created LATFOR to prepare redistricting maps following each census.  (*Id.* ¶ 38.)  LATFOR is made up of four legislators (two from the New York State Senate, two from the New York State Assembly) and two non-legislators.  (*Id.*)  One of the non-legislators is appointed by the President *Pro Tempore* of the New York State Senate, currently defendant Dean G. Skelos, and the other is appointed by the Assembly Speaker, currently defendant Sheldon Silver. (*Id.* ¶¶ 23-24, 28.)  The current members of LATFOR are defendants Assemblyman John J. McEneny, Assemblyman Robert Oaks, Dr. Roman Hedges, State Senator Michael F. Nozzolio, State Senator Martin Malavé Dilan, and Welquis R. Lopez. (*Id.* ¶ 38.)  Once LATFOR issues its redistricting plan, it must be approved by the Legislature and Governor.  (*Id.* ¶ 40.)  In addition, the United States Department of Justice's Civil Rights Division or the United States District Court for the District of Columbia must pre-clear any legislative redistricting plan because three counties of New York City (Bronx, Kings, and New York) are "covered" jurisdictions under section 4(b) of the Voting Rights Act, 42 U.S.C. § 1973b(b).  (*Id.*)

After holding hearings in mid-to-late 2011, LATFOR issued a redistricting plan for the State Assembly and Senate in January 2012 based on the 2010 census results and New York State Corrections figures pursuant to the New York Prisoner Reallocation Law and new hearings were held.  (*See* LATFOR District Maps, http://www.latfor.state.ny.us/maps (last visited February 27, 2012).)   However, Governor Cuomo has stated that he will veto the plan without changes. (*Cuomo Says He Will Veto NY Redistricting Plan*, Wall St. J., Jan. 27, 2012.)  Indeed, Governor Cuomo publicly has stated that he does not believe LATFOR is "independent" and that he will veto any LATFOR plan that is not an "independent product."  (Compl. ¶ 73.)  LATFOR also has held hearings on congressional redistricting, but it has yet to issue a new congressional map.  (*See generally* LATFOR Website, http://www.latfor.state.ny.us (last visited February 27, 2012).)

On January 27, 2012, Chief Judge Gary L. Sharpe of the United States District Court for the Northern District of New York held, *inter alia*, that, in order for New York to comply with the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") of 1986, 42 U.S.C. §§1973ff-1973ff-7, as amended by the Military and Overseas Voter Empowerment ("MOVE") Act, Pub. L. No. 111-84, subtitle H, §§575-589, 123 Stat. 2190, 2318-2335 (2009), New York's congressional primary elections must be held "at least 80 days before the November 6, 2012 federal general election."  *United States v. New York*, No. 1:10-cv-1214, 2012 WL 254263, at *3 (N.D.N.Y. Jan. 27, 2012).  The court determined that, "[i]n 2012, that date shall be June 26, 2012."  *Id*.  On February 9, 2012, Chief Judge Sharpe issued a second order adopting a federal election schedule that set dates for, among other things, the start of the candidate petitioning period as March 20, 2012 and affirming the June 26, 2012 primary election date.  *United States v. New York*, No. 10-cv-1214 (N.D.N.Y. Feb. 9, 2012) (attached to Plaintiffs' Letter requesting the

Court expedite designation of three-judge panel and appointment of special master, dated February 10, 2012, Dkt. Entry 72 ("Pls.' Feb. 10 Letter")).

In light of the looming deadlines ordered by Chief Judge Sharpe, without new electoral districts, candidates and the public allegedly have been hampered in their ability to prepare for the upcoming elections. For example, in an affidavit submitted by Plaintiffs in support of their request for a special master, Vincent Morgan explains that he is running for Congress in what is currently New York's 15th Congressional District, but that he is having trouble building support and raising money without settled district lines. (*See* Aff. of Vincent Morgan, dated Feb. 16, 2012, Dkt. Entry 100-4, ¶ 3.) Morgan also states that, because he can collect signatures to get on the ballot only from within his district, he cannot begin the process to get on the ballot until new districts have been enacted. (*Id.* ¶ 5.)[4]

Following Chief Judge Sharpe's orders moving up the congressional election deadlines, Plaintiffs renewed their request to the District Judge for a three-judge panel. (*See* Pls.' Feb. 10 Letter 2.)[5] On February 13, 2012, pursuant to 28 U.S.C. § 2284(b), the District Court requested that the Honorable Dennis Jacobs, Chief Judge of the Second Circuit Court of Appeals, appoint a three-judge panel to hear this case. (*See* Dkt. Entry 73.) On February 14, 2012, Chief Circuit Judge Jacobs appointed a panel consisting of Circuit Judges Reena Raggi and Gerard E. Lynch, and District Judge Dora L. Irizarry. (*See* Dkt. Entry 74.)

---

[4] Indeed, at the conference held before this Court on February 27, 2012, Defendants acknowledged that congressional candidates may obtain petition signatures only within the district they seek to represent. (Transcript of 2/27/12 Conference Before Three-Judge Panel ("Tr.") 31:10-19.)

[5] Notably, all of the parties have agreed that the appointment of a three-judge panel in this case is appropriate; however, Moving Defendants maintained that such appointment was still premature. (*See* Dkt. Entries 2, 9, 16, 20, 67.)

By electronic order dated February 15, 2012, this Court directed the parties to show cause, by February 17, 2012, why the Court should not appoint a special master to begin the task of creating a new redistricting plan.  On February 21, 2012, this Court issued an electronic order that, *inter alia*, denied the motions to dismiss, noted that this written decision would follow, and scheduled an initial conference for February 27, 2012, on the issue of the appointment of a special master.

## II.      SUBJECT MATTER JURISDICTION – RIPENESS

### A.      Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  Additionally, the court "must accept as true all material factual allegations in the complaint."  *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

In this case, Moving Defendants contend that the Court lacks subject matter jurisdiction because this action is not ripe for review.  (*See* Mem. in Supp. of Certain Defs.' Mot. to Dismiss Pls.' Compl., Dkt. Entry 22-1 ("Skelos Mem.") 5-11.)  Plaintiffs counter that, at a minimum, with the congressional petitioning period due to commence March 20, 2012 and the primary scheduled for June 26, 2012, the lack of any congressional redistricting map not only makes this action ripe, but underscores the urgent need for this Court's intervention.  (*See* Mem. of Law in Opp'n to Certain Defs.' Mot. to Dismiss or Stay, Dkt. Entry 43 ("Pls. Opp.") at 13-19.)

"Ripeness is a jurisdictional inquiry." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). "Ripeness is peculiarly a question of timing. Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (internal quotation marks, brackets, and citation omitted). The Supreme Court has instructed that "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration must inform any analysis of ripeness." *Id.* at 581 (internal quotation marks omitted).

### B.    Analysis

Moving Defendants contend this action is not ripe because LATFOR and the Legislature still have sufficient time to draft and enact a redistricting plan ahead of the 2012 elections. (*See* Skelos Mem. 8-11.) They contend further that the LATFOR process is moving forward and that any veto by Governor Cuomo is speculative. (*Id*.) Defendants Skelos, Silver, McEneny, Hedges, Nozzolio, and Lopez ("Skelos Defendants") argue that federal courts should refrain from hearing redistricting impasse suits until at least four months before the primary elections. (*See id.* at 5-8.)

Plaintiffs counter that it appears increasingly unlikely that the Legislature and the Governor will enact a redistricting plan based upon the 2010 census, the untenable consequence of which would be the disenfranchisement of New Yorkers. (*See* Pls. Opp. 13-19.) Plaintiffs contend that, if the Legislature and the Governor indeed fail to enact a redistricting plan in time and the Court refrains from intervening, the resulting election will be unconstitutional because New York would elect more representatives to Congress than it is currently apportioned, none of the representatives would be seated, and the state and federal electoral districts would not contain equal populations. (Compl. ¶¶ 106-42.) Plaintiffs assert that, while the 2010 census results were

announced on March 24, 2011, there is no redistricting plan that is close to being enacted nearly one year later.  (Compl. ¶¶ 59, 63; Pls. Opp. 4-5.)  They further emphasize that Governor Cuomo has promised to veto any plan created by LATFOR.  (Compl. ¶¶ 69-74.)  Defendants have not provided any definitive proof to the contrary.  Plaintiffs argue, accordingly, that the court must retain jurisdiction and begin the process of drawing new electoral districts before candidates and the public have to start preparing for the primary and general elections, which for congressional seats begins with the petitioning process.  (Pls. Opp. at 15-19.)

Notably, defendants Dilan and Sampson, both of whom are State Senators involved in LATFOR's work—Dilan is a LATFOR member and Sampson is State Senate Minority Leader— oppose the motions to dismiss.  (*See* Mem. of Law by Defs. John L. Sampson and Martin  Malavé Dilan in Opp'n to Defs.' Mots. to Dismiss, Dkt. Entries 45, 63.)   As set forth in their memorandum of law in opposition to the motions to dismiss filed by defendants Kolb and Oaks, filed on January 17:

> The concerns Sampson and Dilan raised in the earlier Memorandum of Law in Opposition (ECF doc no. 45, opposing prior motion to dismiss) are even more relevant now, given that . . . LATFOR has fallen behind its schedule.  . . . Moreover, under the current proposed timeframe, LATFOR will not be able to propose a congressional redistricting plan with enough time to avoid disruptions to the 2012 election calendar. In fact, LATFOR's Co-Chairs have said that they will not proceed with congressional redistricting until after passing the Senate and Assembly redistricting plans, which reflects the pattern of the previous two redistricting cycles. Both times, LATFOR never recommended *any* congressional redistricting plan to the Legislature. Additionally, since Sampson and Dilan's previous court submission, the Senate Majority unexpectedly announced that it intends to add an additional Senate seat, bringing the total to 63. This highly controversial action—at the eleventh hour—perfectly exemplifies LATFOR's secretive and partisan process and is a good reminder of why Governor Cuomo has pledged to veto LATFOR's proposed lines. In the weeks since Sampson and Dilan's previous submission, it thus has become even clearer that the Legislature is *already* at an impasse regarding redistricting. These new developments, combined with the factors cited in the Complaint and in Sampson and Dilan's previous submission . . ., confirm that this action is certainly ripe for court intervention.

(Dkt. Entry 63 at 1-2 (emphasis in original).)

Defendant Dilan avers in an affidavit submitted in support of his opposition to the Skelos Defendants' motion to dismiss, that LATFOR has a history of divisiveness and doubts that it can produce a redistricting plan in accordance with the law.  (*See* Aff. of Martin Malavé Dilan in Opp'n to Skelos Defs.' Mot. to Dismiss, dated Dec. 28, 2011, Dkt. Entry 46, ¶ 5.)[6]  Indeed, at the initial conference before this three-judge panel on February 27, 2012, counsel for defendant Assembly Speaker Silver and counsel for defendant Senate President *Pro Tempore* Skelos each informed the court that there was no congressional plan imminently forthcoming, contrary to previous representations that LATFOR planned to issue new proposed districts by March 1, 2012. (Tr. 5:20-6:4, 6:21-22.)  The Governor has stated publicly that he intends to veto any plan the Legislature produces if it is too partisan, but even if the Governor were to ratify the Legislature's plan, it still would have to undergo the preclearance process, which, if submitted to the Department of Justice as has been done in the past, probably would take about 60 days.

Based on the foregoing, it is apparent that the 2010 census results have made the current plan unusable and violative of voters' rights due to population reductions and shifts resulting in unequal districts.  Most disturbingly, the current 2000 census-based congressional plan calls for 29 seats and the 2010 census apportions only 27.  If New York elects 29 representatives, none will be seated, resulting in New York having no representation in the United States House of Representatives.  It is for these very reasons that the contention of defendants Kolb and Oaks— that this action is not ripe until LATFOR releases its plans, the Legislature and the Governor

---

[6] On January 31, 2012, a group of plaintiffs, including State Senator Dilan, brought an action in New York State Supreme Court, New York County, *Cohen v. LATFOR*, No. 10126/12 (N.Y. Sup. Ct. N.Y. Co., Jan. 31, 2012), challenging LATFOR's proposed plan to add a 63rd State Senate seat as unconstitutional.  That action is still pending.

enact the plans into law and the plan passes the preclearance process—fails.  The court must not wait to intervene until after such a disastrous scenario comes to pass.  *See, e.g.*, *Flateau v. Anderson*, 537 F. Supp. 257, 262 (S.D.N.Y 1982) (three-judge panel) ("If we waited until there no longer was time in 1982 for the reapportionment to be effected, the constitutional violation would then have occurred, but it would be too late for any timely remedy to be structured.").

Under the present circumstances, this action is ripe.  *See Montano v. Suffolk Cnty. Legislature*, 263 F. Supp. 2d 644, 648 (E.D.N.Y. 2003) (concluding that constitutional challenge "is ripe under the very realistic and practical problems facing all the parties and the public—that they must now begin preparing for the primary election"); *Smith v. Clark*, 189 F. Supp. 2d 503, 510 (S.D. Miss. 2002) (three-judge panel) ("If we begin to delay the establishment of election districts and advance qualifying dates, such voters who want to become fully involved in the process will not timely know in which district they are going to be, and thus will not timely know where and with whom to become involved."), *aff'd sub nom. Branch v. Smith*, 538 U.S. 254 (2003); *Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 865 (E.D. Wis. 2001) (three-judge panel) ("[T]he present lawsuit would be ripe when citizens need to start preparing for the primary elections.").  In prior redistricting cycles, courts have intervened before any new legislative plans were enacted into law.  *See, e.g.*, *Rodriguez v. Pataki*, 207 F. Supp. 2d 123, 124-25 (S.D.N.Y. 2002) (order by three-judge panel appointing special master to draw up reapportionment plans when Legislature and Governor had not yet enacted redistricting plan).

The Skelos Defendants argue that, in prior redistricting impasse suits, federal courts did not conclude that claims similar to Plaintiffs' were ripe until approximately four months before the next primary elections.  (Skelos Mem. 7.)  Contrary to the Skelos Defendants' contention, there is no four-month rule.  Courts have intervened when appropriate in each individual case.

11

*See, e.g.*, *Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 356-57 (S.D.N.Y. 2004) (discussing appointing special master in case filed approximately eight months before primary); *Puerto Rican Legal Def. & Educ. Fund, Inc. v. Gantt*, 796 F. Supp. 681, 684-85 (E.D.N.Y. 1992) (redistricting action filed approximately six months before primary); *Flateau*, 537 F. Supp. at 261-62 (redistricting action ripe that was filed seven months before primary).  However, even if the Court were to recognize the Skelos Defendants' self-proclaimed four-month rule, recent developments demonstrate that it is satisfied in this case.  Congressional primaries have been ordered for June 26, 2012, *see United States v. New York*, 2012 WL 254263, at *3, a date less than 120 days away.  Moreover, under that order and by state law, the dates by which potential candidates will need to begin circulating petitions to get on the ballot is March 20, 2012, only 28 days after the entry of our order denying the motion to dismiss.  Professor Nathaniel Persily, a leading expert on redistricting law (who, since our order, has been appointed by the Magistrate Judge as a court-appointed expert in this case) has noted that judicial creation of a districting plan not only takes time, but also that "the beginning and end of the qualification period for candidates and parties for the primary election ballot"—here, March 20, 2012 and April 26, 2012—are critical triggers for assessing the time required.  Nathaniel Persily, *When Judges Carve Democracies: A Primer on Court-Drawn Redistricting Plans*, 73 Geo. Wash. L. Rev. 1131, 1147 (2005).  Unless a plan is in place by March 20, 2012, then, potential candidates for Congress in New York will not know in which districts they may run, or in which districts they must circulate petitions.  Indeed, in their responses to this Court's order to show cause why a special master should not be appointed given the new decision by Chief Judge Sharpe, the Skelos Defendants conceded that, with respect to congressional redistricting, "the time for judicial action is drawing nearer."  (Skelos Defendants' Letter Opposing Special Master, dated Feb. 17, 2012, Dkt. Entry 104, at 3.)  *See also Rodriguez*,

207 F. Supp. 2d at 125 (appointing special master when "the 'eleventh hour' is upon us, if indeed it has not already passed.").

   Whatever weight we might place on predictive testimony about the likely future actions of various New York State officials, moreover, the incontrovertible fact is that no plan had been adopted at the time of our order—and no plan has been adopted as of now.  The political branches of the New York government may yet adopt a districting plan, which might moot this litigation (though we note that a legislatively-adopted plan would still have to undergo a lengthy "preclearance" process under the Voting Rights Act before it could go into effect).  But no such action has occurred, and no such action appears imminent.  In this regard, we emphasize that predictions about when LATFOR will act miss the point:  no plan will have the force of law until and unless it is adopted by both houses of the Legislature and signed by the Governor.  Thus the Court found itself when our order was issued—and still finds itself now—within a month of a deadline after which candidates for Congress, and particularly insurgent candidates or political newcomers, will be significantly prejudiced if no districting plan is in place.  In any event, denying the motion to dismiss and beginning the work of drawing up a plan does not interfere with or displace the authority of the political branches of state government from doing their work. The Legislature can still adopt a plan if it is able to do so.  But if the current impasse is not broken, the Court will be left with no time to act.  Indeed, time is already short.  Professor Persily recommends that "a court should have as its goal the imposition of a plan no later than one month before candidates may begin qualifying for the primary ballot," which "means that the court should begin drawing its plan about three months before the beginning of ballot qualification in order to build in time for possible hearings and adjustments to the plan."  Persily, *supra*, at 1147. Under the present circumstances, the Court has far less time:  we denied the motion to dismiss on

13

February 21, 2012, less than one month before the qualifying period, and have had to construct a tightly-compressed schedule in the hope of implementing a plan even by March 20, 2012, the day the qualifying period begins.  It is no doubt for these reasons that even the movants agreed at our first conference that it was time to appoint a special master to begin work on the plan.  Under those circumstances, the notion that this lawsuit is unripe and premature is completely without merit.

Here, therefore, it is clear that there is no legislative redistricting plan in existence as to the congressional districts and none that will be forthcoming soon.  *See Branch*, 538 U.S. at 262 ("In the present case, . . . there is no suggestion that the District Court failed to allow the state court adequate opportunity to develop a redistricting plan.").  By denying Moving Defendants' motions, the Court holds only that this action is ripe and that it has subject matter jurisdiction. This holding does not interfere with any legislative processes, as the Legislature remains free to come up with a congressional redistricting map of its own.

## III.   STANDING

### A.    Legal Standard

Article III, Section 2 of the United States Constitution limits federal court jurisdiction to the resolution of "cases" and "controversies."  A plaintiff has standing under the Constitution when he has "'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  There are three elements necessary to show the "irreducible constitutional minimum of standing:"

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b)

> actual or imminent, not conjectural or hypothetical.  Second, there must be
> a causal connection between the injury and the conduct complained of . . .
> .  Third, it must be likely, as opposed to merely speculative, that the injury
> will be redressed by a favorable decision.

*McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations, footnote, and internal quotation marks omitted)).

### B.    Analysis

Defendants Kolb and Oaks argue that this action should be dismissed because Plaintiffs lack constitutional standing.  They contend that none of the Plaintiffs have suffered an "injury in fact" because all of Plaintiffs' alleged injuries are based upon "someday intentions" to participate in the elections or, alternatively, that Plaintiffs will not be injured at least until the primary elections are held.  (*See* Mem. of Law in Supp. of Mot. to Dismiss of Def. Brian M. Kolb, Dkt. Entry 41-1, at 8-10; Mem. of Law in Supp. of Def. Robert Oaks' Mot. to Dismiss, Dkt. Entry 42-2, at 3.)

These arguments are without merit.  Under well-settled authority, Plaintiffs have alleged constitutional standing.  In *Baker v. Carr*, 369 U.S. 186 (1962), the plaintiffs alleged that Tennessee's state electoral districts were unconstitutional because they had not been reapportioned since 1901 and, thus, contained unequal populations.  *Id.* at 188-95.  The plaintiffs alleged that they were injured because unequal districts "disfavor[] the voters in the counties in which they reside, placing them in a position of constitutionally unjustifiable inequality *vis-à-vis* voters in irrationally favored counties."  *Id.* at 207-08.  The Court held that these allegations satisfy the "injury in fact" requirement because plaintiffs "are asserting a plain, direct and adequate interest in maintaining the effectiveness of their votes, . . . not merely a claim of the

right possessed by every citizen to require that the government be administered according to law." *Id.* at 208 (citations and internal quotation marks omitted).

The Supreme Court has since recognized that, under *Baker*, "voters have standing to challenge an apportionment statute." *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 331 (1999); *see also Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998) (voting is "the most basic of political rights"); *Arrington*, 173 F. Supp. 2d at 861 ("Courts consistently find that plaintiffs alleging injury to their voting rights have standing to bring suit.").

Here, Plaintiffs' allegations fit squarely within *Baker* and its progeny.  Plaintiffs fall into two categories:  (1) potential candidates and (2) politically active voters whose right to participate in the electoral process is diminished by the current plan.  Plaintiffs allege that they live in overpopulated electoral districts and that their voting power is unconstitutionally diluted under the current electoral map.  (Compl. ¶¶ 108-09, 120, 122.)  They allege that they are politically active and interested in communicating with, contributing to, and volunteering for candidates for state and federal office.  (*Id.* ¶¶ 14-19.)  Plaintiffs also allege that, as citizens of the State of New York, they will lose their congressional representation unless the current congressional district map is revised to account for the two seats New York lost following the 2010 census.  (*Id.* ¶¶ 65-66, 128-29.)  Plaintiff Lieb alleges that he is considering running for State Senate, but that he does not know which district he will be living in following the redistricting process or the identity of his prospective voters.  (*Id.* ¶ 15.)

Given the Legislature's and Governor's failure to enact any redistricting plan with less than four months before the federal primary elections, these alleged injuries are not merely speculative.  Moreover, the relief that Plaintiffs seek (new electoral districts using 2010 census

results) would address the alleged wrongs.   Accordingly, Plaintiffs have adequately alleged that they have standing to bring this suit.

## CONCLUSION

For the reasons set forth above, the motions to dismiss are denied.   In reaching this decision, we remain cognizant of the deference federal courts owe to a state's enacted redistricting plan.   *See Perry v. Perez*, 132 S. Ct. 934, 941 (2012).   Thus, should the New York State Legislature and Governor reach agreement on a redistricting plan, this court will defer to that enactment in considering the need for interim measures while New York seeks preclearance from the Department of Justice.   In short, neither today's ruling nor any future adoption of a court-drawn redistricting map precludes the enactment and implementation of a state drawn plan. *See, e.g.*, *Rodriquez v. Pataki*, 308 F. Supp. 2d 346, 357-58 (S.D.N.Y. 2004) (describing New York's enacting of its own redistricting plan after three-judge panel's adoption of interim congressional districts).   But in the face of a legislative impasse that precludes the parties themselves from predicting when any plan may be enacted and the need to have districts defined by March 20, 2012, when the petitions process begins, we deny dismissal and undertake the task of drawing congressional district lines for New York according to the process set forth in open court on February 27, 2012.

SO ORDERED.

DATED:  Brooklyn, New York
        March 8, 2012

_____/s/_____
REENA RAGGI
United States Circuit Judge

_____/s/_____
GERARD E. LYNCH
United States Circuit Judge

_____/s/_____
DORA L. IRIZARRY
United States District Judge