UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
::::
MARK A. FAVORS, et. al., : Case No. 1:11-CV-05632
: (RR) (GEL) (DLI) (RLM)
Plaintiffs, :
:
v. :
:
ANDREW M. CUOMO, as Governor of the State of New :
York, et. al., :
:
Defendants. :
:
------------------------------------------------------------------ x

**ASSEMBLY MAJORITY DEFENDANTS'
MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A PROTECTIVE ORDER ON
<u>THE GROUND OF LEGISLATIVE PRIVILEGE</u>**

**GRAUBARD MILLER**
The Chrysler Building
405 Lexington Avenue, 19th Floor
New York, New York 10174
(212) 818-8632

Attorneys for Defendants
  Hon. Sheldon Silver, as Speaker of the
  Assembly of the State of New York and
  Democratic Members of LATFOR, John J.
  McEneny and Roman Hedges

Of Counsel:

  C. Daniel Chill

236637.1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................2

ARGUMENT ..................................................................................................................................4

CONCLUSION ................................................................................................................................8

236637.1

# TABLE OF AUTHORITIES

**CASES**                                            **Page**

Backus v. South Carolina, No. 3:11-cv-03120, 2012 U.S. Dist. LEXIS 31683, 2012 WL 786333 (D. S.C. Mar. 9, 2012) ............................................................................................... 6

Cano v. Davis, 193 F. Supp. 2d 1177 (C.D. Cal. 2002) ................................................................. 6

Government of Virgin Islands v. Lee, 775 F.2d 514 (3d Cir. 1985) .............................................. 5

Gravel v. U.S., 408 U.S. 606 (1972) .............................................................................................. 5

Marylanders for Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292 (D. Md. 1992) ............... 6

People v. Ohrenstein, 77 N.Y.2d 38, 563 N.Y.S.2d 744 (1990) .................................................... 5

In re Perry, 60 S.W.3d 857 (Tex. 2001) ........................................................................................ 6

Rodriquez v. Pataki, 2003 U.S. Dist. LEXIS 15934 (S.D.N.Y. September 10, 2003) ............... 6, 7

Simpson v. City of Hampton, 166 F.R.D. 16 (E.D. Va. 1996) ....................................................... 6

State Employees Bargaining Agent Coal. v. Rowland, 494 F.3d 71 (2d Cir. 2007) ...................... 5

Supreme Ct. of Virginia v. Consumers Union of the U.S., Inc., 446 U.S. 719 (1980) .................. 5

Tenny v. Brandhove, 341 U.S. 367 (1951) .................................................................................... 5

U.S. v. Gillock, 445 U.S. 360 (1980) ............................................................................................. 5

**STATUTES**

N.Y. Legis. Law § 83-m ¶ 3 ........................................................................................................... 2

Voting Rights Act, § 2 .................................................................................................................... 4

**NEW YORK STATE CONSTITUTION**

Article III, § 2 ................................................................................................................................ 5

**UNITED STATES CONSTITUTION**

Article I, § 6 .................................................................................................................................. 5

236637.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x
:
MARK A. FAVORS, et. al., : Case No. 1:11-CV-05632
: (RR) (GEL) (DLI)
Plaintiffs, :
:
:
:
v. :
:
:
ANDREW M. CUOMO, as Governor of the State of New :
York, et. al., :
:
:
Defendants. :
:
------------------------------------------------------------------------ x

**ASSEMBLY MAJORITY DEFENDANTS'
MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A PROTECTIVE ORDER ON
THE GROUND OF LEGISLATIVE PRIVILEGE**

The Assembly Majority Defendants, Hon. Sheldon Silver, Assemblyman John J. McEneny and LATFOR member Roman Hedges, respectfully submit this memorandum of law in support of their motion for a protective order on the ground of legislative privilege in accordance with the Court's May 29, 2012 scheduling Order. The Assembly Majority Defendants join in the arguments and motion of the Senate Majority Defendants for a protective order on the ground of legislative privilege.

**PRELIMINARY STATEMENT**

The Senate Minority, the Drayton Intervenors, the Ramos Intervenors and the Lee Intervenors (collectively, "Plaintiffs") have propounded Consolidated Initial Discovery Requests that seek to obtain information regarding the deliberative and communicative processes of the Assembly Majority Defendants in connection with the 2012 Assembly Redistricting Plan. This

236637.1

is true of all document requests regarding the redistricting of the Assembly.[1] Furthermore, Plaintiffs have indicated their intention to depose one or more of the Assembly Majority Defendants regarding their deliberations and communications with respect to developing the 2012 Assembly Redistricting Plan. For the reasons stated herein, the Assembly Majority Defendants' deliberations and communications, pursuant to well-settled law, are privileged communications protected from disclosure. In addition, where non-legislative members of LATFOR and their staff are acting as part of the confidential process by which the Majority Party in control of the Assembly formulates a redistricting plan, their deliberations and communications also are protected by the legislative privilege.

## BACKGROUND

As this Court is aware, the Legislature enacted a redistricting plan for the New York State Assembly. This plan was drafted by the Assembly Majority Office of the New York State Legislative Task Force on Demographic Research and Reapportionment ("LATFOR"). LATFOR's statutory responsibilities include "engaging in such research studies and other activities as the co-chairman may deem necessary or appropriate in the preparation and formulation of the reapportionment plan for next ensuing reapportionment of Senate and Assembly Districts and Congressional Districts of the State." N.Y. Legis. Law § 83-m ¶ 3. For approximately eight years of every decade, LATFOR functions as a nonpartisan body that

---

[1] By way of example, in their Consolidated Initial Discovery Requests, Plaintiffs, in Document Requests No. 19 and 21 seek "documents, including all drafts, prepared by, edited by or reviewed by pertaining to the redistricting of Assembly districts . . ." This request clearly seeks documents which would reveal work in progress documents and documents commenting on such work in progress. Work in progress documents and comments to such documents go to the heart of the deliberative process in formulating a redistricting plan.

2

236637.1

collects election data and compiles it in a central computerized database and works closely with the Bureau of the Census through a variety of specific programs as it prepares for the next Census. (Hedges Declaration, ¶ 3.)[2] However, following each decennial Census, LATFOR creates four separate redistricting offices: one for each of the Senate and Assembly Majorities and the Senate and Assembly Minorities.

Following the 2010 Census, as it did after the 2000 Census, LATFOR created four separate redistricting offices, one each for the Senate and Assembly Majorities and the Senate and Assembly Minorities. Once that separation occurred, starting in or around April 2011, the Assembly Majority LATFOR members, Mr. Hedges and Assemblyman John J. McEneny, reported directly to Speaker Silver and Mr. Hedges moved his offices to the Assembly Majority Redistricting Office located in the Alfred E. Smith State Office Building in Albany, New York. Working from the Assembly Majority Office with his staff in private, confidential consultations with Assemblyman McEneny and other Assembly members, Hedges and the Assembly Majority Redistricting Staff worked on a Assembly Majority Redistricting Plan, which eventually became the Assembly 2012 Redistricting Plan. Mr. Hedges and Assemblyman McEneny's work in assisting the Democrats in drafting a 2012 Assembly Redistricting Plan is kept confidential from the members of LATFOR who were not working with the Assembly Majority party to formulate a redistricting plan. (Hedges Declaration, ¶ 7.) The Assembly Majority LATFOR members can only perform their function of developing a redistricting plan acceptable to a majority of the members if the Assembly members feel comfortable that their

---

[2] References to the Hedges Declaration are to the Declaration of Roman Hedges in Support of the Assembly Majority Defendants' Motion for a Protective Order on the Ground of Legislative Privilege dated June 18, 2012.

3

236637.1

communications with the Assembly Majority LATFOR members are confidential and not subject to public disclosure.

The 2012 Assembly Redistricting Plan drawn by the Assembly Majority Office of LATFOR was passed by the New York Legislature on March 14, 2012 and signed by the Governor on March 15, 2012.[3]

Plaintiffs in their Amended Complaints have asserted claims under Section 2 of the Voting Rights Act against the 2012 Assembly Redistricting Plan only as follows:

1. The Ramos Plaintiffs-Intervenors claim in ¶ 80 of their Amended Complaint that "the New York Legislature's failure to create two majority Latino VAP Assembly Districts in Washington Heights, New York County is a violation of the Voting Rights Act" (DE 247); and

2. The Drayton Plaintiffs-Intervenors claim in ¶¶ 125 and 126 of their Amended Complaint that:

> "125. The failure of the Legislature to create two Black majority-minority districts in Nassau County for the State Assembly violates Section 2 of the Voting Rights Act.
>
> 126. Alternatively, the failure of the Legislature to create two majority-minority (Black/Latino) Assembly districts in Nassau County violates Section 2 of the Voting Rights Act."

(DE 254 at 24.)

## ARGUMENT

Plaintiffs attempt to obtain discovery concerning the deliberations and communications of the Assembly Majority Defendants in connection with formulating the 2012

---

[3] Chapter Amendments to the Assembly Plan were passed on March 21, 2012 and signed into law by the Governor on March 26, 2012.

4

236637.1

Assembly Redistricting Plan. However, such deliberations and communications are protected under the legislative privilege for State Legislators which derives from the Speech or Debate Clause of the United States Constitution. Tenny v. Brandhove, 341 U.S. 367, 372-77 (1951); State Employees Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 83 (2d Cir. 2007); see also U.S. v. Gillock, 445 U.S. 360, 370, 372 (1980). Article I, § 6 of the United States Constitution provides that "for any speech or debate in either House," Senators and Representatives "shall not be questioned in any other place."[4]

Federal Courts routinely accord State Legislatures "common law immunity from liability for legislative acts that are similar in origin and rationale to that accorded Congressmen under the speech and debate clause." Supreme Ct. of Virginia v. Consumers Union of the U.S., Inc., 446 U.S. 719, 733 (1980). This privilege applies to any act that is an "integral part of the deliberative and communicative processes by which members participate in committee and [floor] proceedings with respect to the consideration and passage or rejection of proposed legislation." Gravel v. U.S., 408 U.S. 606, 625 (1972); Government of Virgin Islands v. Lee, 775 F.2d 514, 521 (3d Cir. 1985) ("fact-finding, information gathering, and investigative activities" are covered by the legislative privilege because they "are essential prerequisites to the drafting of bills"). The privilege extends to legislators' "aides and assistants." Gravel, supra, 408 U.S. at 616.

---

[4] Similarly, Article III, § 2 of the New York State Constitution contains an almost identical clause respecting New York State Legislators. In People v. Ohrenstein, 77 N.Y.2d 38, 53, 563 N.Y.S.2d 744, 752 (1990), the New York Court of Appeals held that the Speech and Debate Clause in the New York Constitution "was intended to provide at least as much protection as the immunity granted by the comparable provisions of the Federal Constitution." Id. There, the court, in setting forth the parameters of the privilege, defined "legislative acts" as "those which are integral part of the legislative process" including "committee meetings and hearings," and as encompassing "the underlying motivations for the activities." Id. at 54, 563 N.Y.S.2d at 752.

236637.1

Courts in redistricting and other voting rights cases have routinely denied plaintiffs' efforts to seek testimonial or documentary discovery of legislators or their staff. For example, in Backus v. South Carolina, No. 3:11-cv-03120, 2012 U.S. Dist. LEXIS 31683, 2012 WL 786333 (D. S.C. Mar. 9, 2012), which involved Shaw and Voting Rights Act claims against South Carolina's redistricting plans, the court prohibited "plaintiffs from inquiring into any matters protected by legislative privilege," "mean[ing] Plaintiffs are prohibited from asking any questions concerning communications or deliberations involving legislators or their agents regarding their motives in enacting legislation." 2/8/12 Backus Order at 2 (annexed hereto).

Similarly, in Marylanders for Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292, 294, n. 4 (D. Md. 1992), a three-judge federal court determined that depositions of legislative leaders were foreclosed by legislative privilege, as was "any inquiry into legislative 'motives' concerning the introduction of the redistricting plan," Id. at 295, because legislative immunity "functions as an evidentiary and testimonial privilege." Id. at 298, n. 12. See also, e.g., Cano v. Davis, 193 F. Supp. 2d 1177, 1179 (C.D. Cal. 2002); Simpson v. City of Hampton, 166 F.R.D. 16, 18 (E.D. Va. 1996); In re Perry, 60 S.W.3d 857 (Tex. 2001).

In Rodriquez v. Pataki, 2003 U.S. Dist. LEXIS 15934 (S.D.N.Y. September 10, 2003), the Court recognized that the legislative privilege extends to non-legislative members of LATFOR to the extent they are involved in the deliberative process and communications with legislators or acting as the surrogate or agent for legislators in formulating a redistricting plan. Id. at *7-8 (communications between LATFOR non-legislative members and legislators

6

236637.1

regarding legislators' requests to have redistricting lines drawn in a particular matter are protected by the legislative privilege).[5]

Here, where Mr. Hedges and his staff acted as part of the Assembly Majority in formulating a redistricting plan, he and his staffs' participation in the deliberative process and communications necessary to develop the 2012 Assembly Redistricting Plan are protected by the legislative privilege.

---

[5] Prior to issuance of its September 10, 2003 order in Rodriguez, the Magistrate Judge issued an order which allowed certain document discovery concerning the "operations" of LATFOR based on a misunderstanding of the manner in which LATFOR works following each decennial Census. However, the Magistrate in that September 10, 2003 decision made clear that

> The defendants' assertions of legislative privilege nevertheless were upheld to the extent that the plaintiffs sought documentation reflecting the thought processes of individual legislators "which took place outside LATFOR or after the proposes [2002] redistricting plan reached the floor of the Legislature."

Rodriguez v. Pataki, 2003 U.S. Dist. LEXIS at *2. In said September 10, 2003 order, the Magistrate clarified his prior order and made clear that discovery regarding LATFOR's work with legislators in formulating a redistricting plan was protected by the legislative privilege and was not just unprotected information concerning the "operations" of LATFOR.

236637.1

7

## CONCLUSION

As the Senate Majority notes, Plaintiffs' discovery requests should be quashed as they "strike at the core of the legislative privilege, which is intended to enable legislators and those who assist them to 'focus on their public duties by removing the costs and distractions attending lawsuits.'" EEOC v. Wash. Suburban Sanitary Comm'n, 631 F.3d 174, 180-81 (4th Cir. 2011). (Memorandum of Law in Support of Senate Majority Defendants' Motion to Quash and for a Protective Order, p. 2.)

Based on the foregoing, and the arguments made in the Senate Majority Defendants' motion, the Assembly Majority Defendants respectfully request that their motion for a protective order be granted and Plaintiffs be precluded from obtaining discovery from the Assembly Majority Defendants about their deliberations and communications with respect to formulating and passing the 2012 Redistricting Plan.

Dated: New York, New York
      June 18, 2012

**GRAUBARD MILLER**

By: _____
      C. Daniel Chill (CC 6940)
The Chrysler Building
405 Lexington Avenue - 19th Floor
New York, New York 10174
(212) 818-8800
dchill@graubard.com

Attorneys for Defendants
   Hon. Sheldon Silver, as Speaker of the
   Assembly of the State of New York
   and Democratic Members of LATFOR,
   John J. McEneny and Roman Hedges

236637.1

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| VANDROTH BACKUS, WILLIE HARRISON BROWN, CHARLESANN BUTTONE, BOOKER MANIGAULT, EDWARD MCKNIGHT, MOSES MIMS, JR, ROOSEVELT WALLACE, and WILLIAM G. WILDER, on behalf of themselves and all other similarly situated persons,<br><br>Plaintiffs,<br><br>SENATOR DICK ELLIOTT<br><br>Intervener-Plaintiff,<br><br>v.<br><br>THE STATE OF SOUTH CAROLINA, NIKKI R. HALEY, in her capacity as Governor, KEN ARD, in his capacity as Lieutenant Governor, GLENN F. MCCONNELL, in his capacity as President Pro Tempore of the Senate and Chairman of the Senate Judiciary Committee, ROBERT W. HARRELL, JR, in his capacity as Speaker of the House of Representatives, JAMES H. HARRISON, in his capacity as Chairman of the House of Representatives' Judiciary Committee, ALAN D. CLEMMONS, in his capacity as Chairman of the House of Representatives' Elections Law Subcommittee, MARCI ANDINO, in her capacity as Executive Director of the Election Commission, JOHN H. HUDGENS, III, Chairman, NICOLE S. WHITE, MARILYN BOWERS, MARK BENSON, and THOMAS WARING, in their capacity as Commissioners of the Elections Commission,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.: 3:11-cv-03120-HFF-MBS-PMD<br><br><br><br><br><br><br><br><u>Order</u> |

For the reasons set forth in Defendant McConnell's Motion to Quash and for a Limited Protective Order and Accompanying Memorandum of Points and Authorities, this Court hereby **GRANTS** Defendants McConnell and Harrell's motions. Deposition topics 5, 12, and 14, which relate to the drafting of the redistricting plans, are quashed. Deposition topic 13, which concerns communications involving legislators and their legislative agents, is also quashed. Additionally, deposition topics 7 and 16 are quashed to the extent the questions involve communications between the Senate or the House and "private consultants or experts."

With respect to the remaining topics in Plaintiffs' Notice of Deposition, this Order prohibits Plaintiffs from inquiring into any matters protected by legislative privilege. That means Plaintiffs are prohibited from asking any questions concerning communications or deliberations involving legislators or their agents regarding their motives in enacting legislation. *See Alexander v. Holden*, 66 F3d. 62, 68 n.4 (4th Cir. 1995) ("In *Berkley*, we suggested that council members may be privileged from testifying in federal district court regarding their motives in enacting legislation . . . .") (citing *Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 303 n. 9 (4th Cir. 1995).

In their response, Plaintiffs argue that Defendants have waived any objection based on attorney client privilege or work product doctrine. The Court disagrees that those privileges have been waived.

Subsequent to their response, the Court received a letter from Plaintiffs' counsel explaining that Plaintiffs anticipate opposing counsel may object to some or all of the questions put to the witnesses they are deposing on February 9, 2012 by asserting attorney-client privilege or work product doctrine. Plaintiffs' request that the Court designate a member of the panel to

be available to speak via telephone to rule on any objection that may arise. The Court denies that request. This Order is sufficient guidance for the depositions. Any other disputes will be resolved by motion after the depositions.

**It is SO ORDERED.**

*/s/ Patrick Michael Duffy*
PATRICK MICHAEL DUFFY
United States District Judge

February 8, 2011
Charleston, SC