# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

MARK A. FAVORS et al.,

        Plaintiffs,                No. 11 Civ. 5632 (RR) (GEL) (DLI) (RLM)

     v.

ANDREW M. CUOMO et al.,

        Defendants.

-----------------------------------------------------------X

## CONSOLIDATED INITIAL DISCOVERY REQUESTS

PLEASE TAKE NOTICE that the Senate Minority, the Drayton Intervenors, the Ramos Intervenors, and the Lee Intervenors, by and through their undersigned attorneys, hereby demand that Defendants produce for inspection and copying at each of the offices listed in the signature block below, by June 18, 2012 (pursuant to Judge Mann's order), all documents which are responsive to the requests that are contained herein.

PLEASE TAKE FURTHER NOTICE that the Senate Minority, the Drayton Intervenors, the Ramos Intervenors, and the Lee Intervenors hereby further demand that Defendants answer under oath the following interrogatories by June 18, 2012 (pursuant to Judge Mann's order) and in the manner prescribed by Rule 33 and Local Rule 33.3.

## DEFINITIONS

The Uniform Definitions set forth in Local Rule 26.3 of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York shall be used to interpret these document demands and interrogatories and are hereby incorporated by reference. In addition, as used in these document requests and interrogatories:

1

1. The "Senate Majority" refers to the Republican Members of the New York Senate and/or those under the guidance, direction, and control of Temporary Senate President and Majority Leader Dean Skelos, including without limitation officials at the New York State Legislative Task Force on Demographic Research and Reapportionment ("LATFOR") who take direction from Senator Skelos and/or others in the Senate Majority.

2. The "2012 Senate Plan" refers to all aspects of Chapter 16 of the Laws of 2012 and Chapter 20 of the Laws of 2012 relating to the redistricting of the New York Senate.

3. "Plan Architects" refers to the persons or persons, including Senators, staff, consultants, and attorneys, who were primarily responsible for the design of the Senate districts that were proposed on January 26, 2012 and for the design of the Senate districts in the enacted 2012 Senate Plan.

4. The "Hudson Valley Region" shall have the meaning ascribed to that term in Exhibit D to Todd Geremia's May 4, 2012 Declaration.

5. The "Rest of Upstate Region" shall have the meaning ascribed to that term in Exhibit D to Todd Geremia's May 4, 2012 Declaration.

6. An "overpopulated" district shall refer to a district with a total population above the mean district population.

7. An "underpopulated" district shall refer to a district with a total population below the mean district population.

8. "Concerning" or "relating to" mean related to, relating to, consisting of, referring to, pertaining to, concerning, describing, evidencing, substantiating, reflecting, supporting, prepared in connection with, used in preparation for, or being in any way legally or logically connected with the matter discussed.

9. "Communication" refers to any transfer of information, ideas, opinions, or thoughts by any means, at any time or place, under any circumstances, and is not limited to written or oral transfers between natural persons, but includes all other transfers, including electronic transfers, transfers of information stored on computer disk or in computer memory, and memoranda to file.

10. The term "document" means, without limitation, any written, recorded, or graphic material, whether prepared by you or any other person, that is in your possession, custody, or control, including memoranda, reports, letters, telegrams, electronic mail, other electronic correspondence, and any other communications or information recorded in any form or medium; notes, minutes, and transcripts of conferences, meetings, and telephone or other communications; transparencies, slides, handouts, and multimedia presentations; contracts and other agreements; statements, ledgers, and other records of financial matters or commercial transactions; notebooks and diaries; plans and specifications; publications; photographs; diagrams, graphs, charts, and other drawings; photocopies, microfilm, and other copies or reproductions; audio and video recordings; tape, disk (including all forms of magnetic, magneto-optical, and optical disks), and other electronic recordings; financial models; statistical models and other data compilations; and computer printouts. The term includes all drafts of a document; the original document (or a copy thereof if the original is not available); and all copies that differ in any way from the original (including as to any notations, underlining, or other markings). The term also includes information stored in, or accessible through, computer or other information retrieval systems, together with instructions and all other materials necessary to use or interpret such data compilations.

11. Identify (with Respect to Persons): When referring to a person, to "identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

12. Identify (with Respect to Documents): When referring to documents, to "identify" means to give, to the extent known, the (i) type of document, (ii) general subject matter, (iii) date of the document, and (iv) author(s), addressee(s) and recipient(s), or, alternatively to produce such document(s) for inspection if not called for in the Document Request.

13. Identify (with Respect to Communications): A request to "identify" a communication means: (i) to state whether it was written or oral, and if written, to identify each document comprising or evidencing such communication; (ii) to state the date and place of such communication; (iii) to identify each individual participating therein and each individual who was present at the place or places of such communication; (iv) to state what was said by each participant in the course of such communication, or if now known, the substance of such communication.

14. Person: The term "person" is defined as any natural person or any business, legal or governmental entity, corporation or association.

15. All/Each: The terms "all" and "each" shall be construed as all and each.

16. And/Or: The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this discovery request all responses that might otherwise be construed to be outside of its scope.

17. Number: The use of the singular form of any words includes the plural and vice versa.

## INSTRUCTIONS

1. In responding to the following requests (collectively the "request"), you shall furnish all information that is available to you, including information or materials in the possession, custody, or control of your attorneys, accountants, investigators, experts, representatives, contractors, employees, or other agents.

2. If any document responsive to the requests has been lost, destroyed, or is otherwise unavailable, describe and identify each such document by stating in writing: (i) the name(s) of the authors(s), the name(s) of the person(s) who received the original and all copies and the date and subject matter, (ii) the last known custodian of the document, (iii) the incident, event, or occurrence during which such document was lost, destroyed, or otherwise became unavailable, (iv) each person having knowledge of the circumstances of it being lost, discarded or destroyed, and (v) your efforts to locate each such document.

5. If a claim of privilege is asserted with respect to any document (including without limitation legislative privilege or attorney-client privilege), or you refuse to disclose any document requested herein on any other ground, state the basis for your claim that such document need not be disclosed with such specificity as will permit the Court to determine the legal sufficiency of your objection or position, and, for each such document, identify:

    a. whether the document contains a request for legal advice and, if so, identify the person who requested the legal advice;

5

      b.      whether the document contains advice as to the meaning or application of particular laws or rules in response to such request;

      c.      any further information to explain and support the claim of privilege and to permit the adjudication of the propriety of that claim;

      d.      the nature of the privilege (including work product) that is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked;

      e.      the type of document, *e.g.*, letter or memorandum; the general subject matter of the document; and such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author, addressee, and any other recipient of the document, and, where not apparent, the relationship of the author, addressee, and other recipient to each other.

3. If in answering these requests you claim any ambiguity in interpreting either the request or a definition instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond, rather you shall set forth in a part of your response to such a request the language deemed to be ambiguous and the interpretation chosen or used in responding to the request.

4. Respond separately and completely to each document request or subdivision thereof and each interrogatory or subdivision thereof, setting forth the question in full followed by each answer.

5. With respect to the documents requested, this request seeks production of all documents described, in their entirety, along with any attachments, drafts and non-identical copies.

6. Questions regarding the interpretation of this request should be resolved in favor of the broadest possible construction.

7. The documents produced in response to these requests shall be: (i) organized and designated to correspond to the categories in the requests, or (ii) produced in a form that accurately reflects how they are maintained by you in the normal course of business, including, but not limited to the following:

    a. that all associated file labels, file headings and file folders be produced with the responsive documents from each file and that each file be identified as to its owner(s) or custodian(s);

    b. that all pages now stapled or fastened together be produced stapled or fastened together; and

    c. that all documents which cannot legibly be copied be produced in their original form.

8. This request is to be considered as continuing and each Defendant is requested to provide, by way of supplementary responses hereto, such additional information as it or any persons acting on its behalf may hereafter obtain that will augment, clarify, or otherwise modify the responses now given to this request. Such supplementary responses are to be filed and served upon counsel for the Senate Minority as soon as practicable after receipt of such information or documents.

## DOCUMENTS TO BE PRODUCED

1. All documents relating to or evidencing any instructions or directions that were provided to the Plan Architects and/or to any LATFOR official relating to the 2012 Senate Plan.

2. All documents relating to or evidencing the reasons why the Senate districts contained in the 2012 Senate Plan contain population deviations and the reasons why the districts in the 2012 Senate Plan contain their particular population deviations.

3. All documents relating to or evidencing any effort by the Senate Majority and/or the Plan Architects to pursue or heed allegedly traditional redistricting principles such as

7

maintaining the integrity of county and other political subdivision borders, drawing compact districts, preserving the cores of prior districts, and avoiding the pairing of incumbents.

4. All documents relating to or evidencing any consideration by the Senate Majority and/or the Plan Architects of partisan goals relating to the 2012 Senate Plan.

5. All documents relating to or evidencing any consideration by the Senate Majority and/or the Plan Architects of alternative Senate districts or alternative Senate redistricting plans.

6. All documents relating to or evidencing to the examination and evaluation of any proposed Senate plans that were submitted to LATFOR, including without limitation all documents relating to or evidencing any consideration of whether or not to adopt any of those proposals in whole or in part.

7. All documents relating to the decision to increase the size of the Senate to 63 seats in 2012, including without limitation all documents relating to and/or evidencing the reason or reasons why a 63rd Senate district was added in 2012, and including without limitation all documents relating to and/or evidencing the reason or reasons why a different Senate size was not adopted in 2012.

8. All documents relating to or evidencing the decision to add an additional district in the Hudson Valley Region, including without limitation all documents relating to and/or evidencing the reason or reasons why that district was added in 2012.

9. All documents relating to or evidencing the decision to underpopulate the districts in the Hudson Valley Region, including without limitation all documents relating to and/or evidencing the reason or reasons why the districts in the Hudson Valley Region were underpopulated.

10. All documents relating to or evidencing the decision to underpopulate the districts in the Rest of Upstate Region, including without limitation all documents relating to and/or evidencing the reason or reasons why the districts in the Rest of Upstate Region were underpopulated.

11. All documents relating to or evidencing the decision to overpopulate the Senate districts in the New York City area and/or on Long Island, including without limitation all documents relating to and/or evidencing the reason or reasons why the such districts were overpopulated.

12. All retainer letters and/or contracts relating to legal services between the Senate Majority, the Plan Architects, and/or any LATFOR official and any attorney or attorneys (including without limitation any attorney at Jones Day or Lewis & Fiore) representing the Senate Majority, the Plan Architects, and/or any LATFOR official in connection with the 2012 Senate Plan.

13. All documents relating to and/or reflecting any communications between or among the Senate Majority, the Plan Architects, and/or any LATFOR official and any attorney or attorneys (including without limitation any attorney at Jones Day or Lewis & Fiore) relating to or concerning the size of the Senate.

14. All attorney time sheets reflecting hours billed by any attorney representing the Senate Majority, the Plan Architects, and/or any LATFOR official (including without limitation any attorney at Jones Day or Lewis & Fiore) relating to the 2012 Senate Plan.

15. All documents that the Senate Majority intends to introduce into the summary judgment records and/or into evidence at the trial in this action.

9

16. All documents not produced in response to the requests above concerning the allegations in the Senate Minority's cross-claim.

17. Copies of all electronic and hardcopy documents, including all drafts, prepared by, edited by or reviewed by Defendants pertaining to the creation of a post 2010 Census redistricting plan for the New York Senate. This request excludes all public documents including the documents filed with the United States Department of Justice for preclearance of the 2012 Senate redistricting plan.

18. Copies of all electronic and hardcopy documents, including all drafts, prepared by, edited by or reviewed by concerning the location of the new Senate seat in the creation of a post 2010 Census redistricting plan for the New York Senate. This request excludes all public documents including the documents filed with the United States Department of Justice for preclearance of the 2012 Senate redistricting plan.

19. Copies of all electronic and hardcopy documents, documents, including all drafts, prepared by, edited by or reviewed by pertaining to the redistricting of Assembly districts within the City of New York. This request excludes all public documents including the documents filed with the United States Department of Justice for preclearance of the 2012 Senate redistricting plan.

20. Copies of all electronic and hardcopy documents, documents, including all drafts, prepared by, edited by or reviewed by Defendants pertaining to the implementation or non-implementation of Part XX of Chapter 57 of the Laws of 2010 of New York.

21. Copies of all electronic and hardcopy documents, documents, including all drafts, prepared by, edited by or reviewed by Defendants pertaining to the redistricting of Assembly districts within the County of Nassau. This request excludes all public documents including the

documents filed with the United States Department of Justice for preclearance of the 2012 Assembly redistricting plan. This request excludes all public documents including the documents filed with the United States Department of Justice for preclearance of the 2012 Senate redistricting plan.

22. Copies of all documents provided to members of LATFOR by LATFOR staff or consultants during the redistricting process in connection with the redistricting of the Senate and Assembly after the 2010 Census. This request excludes all public documents including the documents filed with the United States Department of Justice for preclearance of the 2012 Senate redistricting plan.

23. Copies of all documents provided to the members of the Senate and Assembly by LATFOR staff or consultants in connection with the redistricting of the Senate and Assembly after the 2010 Census. This request excludes all public documents including the documents filed with the United States Department of Justice for preclearance of the 2012 Senate redistricting plan.

24. Copies of all documents provided to the Governor or his staff by LATFOR, its staff or consultants, and the Senate or Assembly districts within Nassau County, their staff or consultants regarding the redistricting of the Senate and Assembly after the 2010 Census. This request excludes all public documents including the documents filed with the United States Department of Justice for preclearance of the 2012 Senate redistricting plan.

25. Copies of all reports, memoranda, analyses, and data utilized by LATFOR, the Senate or the Assembly in connection with the redistricting of the Senate or Assembly districts within Nassau County or any persons acting on their behalf, including, but not limited to, staff members or consultants. This request excludes all public documents including the documents

filed with the United States Department of Justice for preclearance of the 2012 Senate redistricting plan.

26. Copies of all reports generated from demographic data, election data, racial bloc voting data and census data in connection with the redistricting process for the Senate and Assembly districts on Long Island. This request excludes all public documents including the documents filed with the United States Department of Justice for preclearance of the 2012 Senate redistricting plan.

27. Copies of all emails, letters or memoranda by and amongst the members of LATFOR, its staff or consultants, the members of the Senate or Assembly districts on Long Island, or their staff or consultants and/or any individual in connection with the redistricting process for the Senate or Assembly. This request excludes all public documents including the documents filed with the United States Department of Justice for preclearance of the 2012 Senate redistricting plan.

28. Copies of any emails, correspondence, computer files, notes, and memoranda between LATFOR, its staff, members of the Senate or Assembly districts on Long Island, and their staff, and experts retained by same in connection with the redistricting of the Senate or the Assembly after the 2010 Census, and any other persons within or without of the Legislature regarding the redistricting process as aforementioned. This request excludes all public documents including the documents filed with the United States Department of Justice for preclearance of the 2012 Senate redistricting plan.

29. All documents relating to, or referenced or reviewed to prepare answers to, any of the interrogatories listed below.

## INTERROGATORIES

1. Identify all persons who were involved in the design of the Senate districts in the 2012 Senate Plan, including without limitation all Senators, Senate staffers, LAFTOR officials, attorneys, experts, and consultants.

2. Identify the Plan Architects.

3. Identify the persons who had ultimate decision-making authority with respect to the design of the Senate districts in the 2012 Senate Plan.

4. Identify the reasons why the Senate districts in the 2012 Senate Plan are not equipopulous.

5. Identify the reasons why a 63rd Senate district was added in 2012.

6. Identify the reasons why a different Senate size (i.e., other than 63 Senate districts) was not adopted in 2012.

7. Identify any witnesses the Senate Majority intends to rely upon in defense against the allegations in the Senate Minority's cross-claim.

8. Identify the person or persons who conceptualized the goals, design or purposes of the drafts and the enacted 2012 Senate Plan or who drew or assisted in the drawing of the enacted 2012 Senate Plan and where they are or were employed, their relationship to the Defendants, and their roles and responsibilities in drawing, conceptualizing the goals, design or purposes of the drafts and the enacted Senate plan.

9. Identify the person or persons who conceptualized the goals, design or purposes of the drafts and the enacted 2012 Assembly districts on Long Island and in within the County of Queens or who drew or assisted in the drawing of the enacted 2012 Assembly districts on Long Island and in within the County of Queens and where they are or were employed, their

13

relationship to the Defendants, and their roles and responsibilities in drawing, conceptualizing the goals, design or purposes of the drafts and the enacted Assembly districts on Long Island and in within the County of Queens.

10. Identify the names, titles, dates of employment, and contact information of all Defendants' staff, advisers, interns, outside consultants (non-government payroll) and volunteers who had provided or who provide assistance, data, comments and information in analyzing or mapping to Defendants for the 2012 State Senate Plan. Also, indicate whether such individuals provided assistance or information during the 2000-02 New York legislative redistricting process.

11. Identify the specific districts where data comparisons, documents, commentary or memoranda were provided to the Defendants regarding past New York and federal elections and precinct analysis relating to the proposed and final district maps of the Senate Plan during the redistricting process. If affirmative, identify all persons, their titles, dates of employment, and contact information that have submitted or communicated in data comparisons, documents, commentary or memoranda to the Defendants regarding the above analysis during the Senate's redistricting process.

12. Identify the specific districts where data comparisons, documents, commentary or memoranda were provided to the Defendants regarding racial bloc voting (rvb) analysis and racial polarization analysis involving any of the proposed and final districts of the Senate Plan during the redistricting process. If affirmative, identify all persons, their titles, dates of employment, and contact information that have submitted or communicated in data comparisons, documents, commentary or memoranda to the Defendants regarding the above analysis during the Senate's redistricting process.

13. Identify the persons, advisers, and entities that have provided analysis, training, instruction, discussion and correspondence with Defendants and LATFOR staff regarding the concepts of "voter dilution", "the weight of a citizen's vote" or "the dilution of upstate voting power" in New York State redistricting. If these subjects were mentioned or discussed, state the dates and locations of such discussions and meetings, and identify the names of attendees, titles, and contact information.

14. Defendants contend that drawing an additional minority-majority Latino Senate district in New York City for the 63-seat Senate plan did not meet their redistricting criteria, did not satisfy Defendants' partisan purposes, or, was not even considered as an option, long after receiving submissions of alternate mapping plans prior to the March 14, 2012 legislative vote on the Senate-Assembly Plans. Is this contention true? Which Defendants, if any, reviewed or discussed the merits of the Unity Plan and the Breitbart Alternate Senate Plan?

15. State whether the voting rights of Latinos, the voting power/electoral capacity of New York's Latino populations, the population growth in the Latino community, and Latino districts and communities of interest, were discussed, cited or considered during the development and implementation of the Defendants' redistricting criteria, and, in the drafting and mapping of the Senate Plan. Identify the persons, advisers, and entities that have provided analysis, training, instruction, or discussion about Latino populations, the placement of Latino communities and how district lines were drawn.

Dated: May 31, 2012
New York, New York

        CUTI HECKER WANG LLP

        By: _____/s/_____
           Eric Hecker
           John R. Cuti
           Julie B. Ehrlich
           Alexander Goldenberg

        305 Broadway, Suite 607
        New York, New York 10007
        (212) 620-2603

        Jeffrey M. Wice
        P.O. Box 42442
        Washington, D.C. 20015
        (202) 494-7991

        *Attorneys for the Senate Minority*

        KAYE SCHOLER LLP

        By: _____/s/_____
           James D. Herschlein
           C. Kawezya Burris
           Noah Peters
           Grace Yang

        425 Park Avenue
        New York, New York 10022

        Jerry G. Vattamala
        Glenn D. Magpantay
        Kenneth Kimerling
        ASIAN AMERICAN LEGAL DEFENSE
        AND EDUCATION FUND
        99 Hudson Street, 12th floor
        New York, New York 10013-2815
        212-966-5932

        *Attorneys for the Lee Intervenors*

CENTER FOR LAW AND SOCIAL
JUSTICE, MEDGAR EVERS COLLEGE,
CUNY


By: /s/
    Joan P. Gibbs
    Esmeralda Simmons

1534 Bedford Avenue, 2nd Floor
Brooklyn, NY 11216
(718) 804-8893

Randolph M. McLaughlin
Jeffrey M. Norton
Newman Ferrara LLP
1250 Broadway, 27th Floor
New York, New York 10001
(212) 619-5400

Frederick K. Brewington
Valerie M. Cartwright
LAW OFFICES OF FREDERICK K.
BREWINGTON
556 Peninsula Boulevard
Hempstead, N.Y. 11550
516-489-6959

*Attorneys for the Drayton Intervenors*


LATINO JUSTICE


By: /s/
    Jackson Chin

99 Hudson Street, 14th Floor
New York, NY 10013-2815
212.219.3360

*Attorneys for the Ramos Intervenors*

17