```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
MARK A. FAVORS, HOWARD LIEB, LILLIE H.            :
GALAN, EDWARD A. MULRAINE, WARREN                 :
SCHREIBER, and WEYMAN A. CAREY,                   :
                                                  :
                         Plaintiffs,              :
                                                  :
DONNA KAYE DRAYTON, EDWIN ELLIS, AIDA             :
FORREST, GENE A. JOHNSON, JOY WOOLLEY,            :
SHEILA WRIGHT, MELVIN BOONE, GRISSELLE            :
GONZALEZ, DENNIS O. JONES, REGIS THOMPSON         :
LAWRENCE, AUBREY PHILLIPS, LINDA LEE,             :   MEMORANDUM  & ORDER
SHING CHOR CHUNG, JULIA YANG, JUNG HO             :       DOCKET #11-cv-5632
HONG, JUAN RAMOS, NICK CHAVARRIA,                 :      (RR)(GEL)(DLI)(RLM)
GRACIELA HEYMANN, SANDRA MARTINEZ,                :
EDWIN ROLDAN, MANOLIN TIRADO, LINDA               :
ROSE, EVERET MILLS, ANTHONY HOFFMAN,              :
KIM THOMPSON-WEREKOH, CARLOTTA BISHOP,            :
CAROL RINZLER,GEORGE STAMATIADES,                 :
JOSEPHINE RODRIGUEZ,   SCOTT AUSTER, and          :
YITZCHOK ULLMAN,                                  :
                                                  :
                         Intervenor Plaintiffs,   :
                                                  :
                         -against-                :
                                                  :
ANDREW M.CUOMO, as Governor of the State of New   :
York, ROBERT J. DUFFY, as President of the Senate of :
the State of New York, DEAN G. SKELOS, as Majority :
Leader and President Pro Tempore of the Senate of the :
State of New York, SHELDON SILVER, as Speaker of  :
the Assembly of the State of New York, JOHN L.    :
SAMPSON, as Minority Leader of the Senate of the State :
of New York, BRIAN M. KOLB, as Minority Leader of :
the Assembly of the State of New York, the NEW  YORK :
STATE LEGISLATIVE TASK FORCE ON                   :
DEMOGRAPHIC RESEARCH AND APPORTIONMENT :
("LATFOR"), JOHN J. McENENY, as Member of         :
LATFOR, ROBERT OAKS, as Member of LATFOR,         :
ROMAN HEDGES, as Member of LATFOR, MICHAEL :
F. NOZZOLIO, as Member of LATFOR, MARTIN          :
MALAVÉ DILAN, as Member of LATFOR, and            :
WELQUIS R. LOPEZ, as Member of LATFOR,            :
                                                  :
                         Defendants.              :
----------------------------------------------------------------------x
```

**REENA RAGGI, United States Circuit Judge**
**GERARD E. LYNCH, United States Circuit Judge**
**DORA L. IRIZARRY, United States District Judge:**

In this opinion, we address the viability of the federal Constitutional equal population cross-claim asserted by the Senate Minority against the Senate Majority.[1] The Senate Majority moves for dismissal, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, contending that the Senate Minority lacks standing to assert such a claim, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that the claim is barred by the doctrine of *res judicata*. (*See* Memorandum of Law in Support of Senate Majority's Motion to Dismiss the Cross-Claim ("Sen. Maj. Mem."), Dkt. Entry No. 396-1.) The Senate Minority opposes the motion. (*See* Senate Minority's Memorandum of Law in Opposition to Dismissal ("Sen. Min. Opp'n"), Dkt. Entry No. 435.) For the reasons set forth below, the Senate Majority's motion is granted.

## BACKGROUND[2]

On March 23, 2012, the Senate Minority filed an amended answer to the amended complaint in which the Senate Minority also asserted a cross-claim against the Senate Majority on the ground that the Senate Plan[3] violates the equal population requirement of the Fourteenth Amendment. (*See generally* Senate Minority's Answer to Amended Complaint & Cross-Claim ("Sen. Min. Am. Ans." or "Cross-claim"); Dkt. Entry No. 370.) The Senate Minority contends that the "Senate Majority exalted its partisan agenda over the requirements of the one-person, one-vote rule," while conceding that the Senate Plan's population deviations for the various

---

[1] The term "Senate Minority" refers to Senators John L. Sampson and Martin Malavé Dilan. The term "Senate Majority" refers to Senators Dean G. Skelos, Michael F. Nozzolio, and Welquis R. Lopez.

[2] The Court assumes the parties' familiarity with the facts and circumstances of this case and its procedural posture, as set forth in *Favors v. Cuomo*, 11-cv-5632(RR)(GEL)(DLI)(RLM), 881 F. Supp. 2d 356 (E.D.N.Y. 2012); and *Favors v. Cuomo*, No. 11-cv-5632(RR)(GEL)(DLI)(RLM), 2012 WL 928223 (E.D.N.Y. Mar. 19, 2012).

[3] The term "Senate Plan" refers to the redistricting plan for the New York State Senate proposed by Defendant New York State Legislative Task Force on Demographic Research and Reapportionment ("LATFOR") as a result of the 2010 census and enacted by the Senate, which increased the size of the Senate from 62 to 63 seats.

2

districts remain below the 10% threshold.[4]  (*Id*. at ¶ 4.)  Nonetheless, the Senate Minority maintains that the Senate Plan's population deviations result in the "overpopulating of minority-concentrated New York City-area districts."  (*Id*. at ¶ 7.)  In particular, "most of the black, Hispanic and Asian-American residents of New York State, along with their non-Hispanic white neighbors in New York City, are deprived of their due proportion of representation, while residents of the upstate region are overrepresented."  (*Id*.)

Prior to asserting this cross-claim, Senator Dilan, a member of LATFOR, and several voters who reside in various districts around the State filed a petition in New York State Supreme Court, New York County, challenging the Senate Plan on the ground that, by increasing the size of the Senate to 63 seats, the Senate Plan violated Article III, section 4 of the New York State Constitution that specifies the method for redistricting calculations for the Senate.  (Complaint, *Cohen v. Cuomo*, Index No. 12-101026 ("*Cohen* Compl."), ¶¶ 137-49.)  They further alleged that, in issuing a recommendation to the Senate to increase its size, LATFOR acted in an arbitrary and capricious manner, in violation of section 7803 of New York Civil Practice Laws and Rules.  (*Id*. at ¶¶ 150-52.)  The trial court dismissed the action on the ground that it was not ripe for judicial review because, at that time, the Senate had not yet enacted the Senate Plan proposed by LATFOR.  (May 3, 2012 Opinion, *Cohen v. Cuomo*, Index No. 12-101026, attached as Ex. 4 to Declaration of Eric Hecker ("Hecker Decl."); Dkt. Entry No. 436.)  On appeal, the New York State Court of Appeals affirmed the trial court's dismissal holding that the petitioners failed to establish that the proposed increase in the size of the Senate violated

---

[4]  In the context of equal population challenges to the redistricting of state legislative seats, the Supreme Court "has recognized that minor deviations from absolute population equality may be necessary to permit states to pursue other legitimate and rational state policies." *Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 363 (S.D.N.Y. 2004) (per curiam), *summ. aff'd*, 543 U.S. 997 (2004) (citing *Reynolds v. Sims*, 377 U.S. 533, 577-81 (1964)). Generally, "an apportionment plan with a maximum population deviation under 10% falls within this category of minor deviations." *Brown v. Thompson*, 462 U.S. 835, 842 (1983).

Article III, section 4 of the New York Constitution. *See Cohen v. Cuomo*, 19 N.Y.3d 196, 539-40 (2012).

In moving for dismissal of the Senate Minority's cross-claim, the Senate Majority contends that the Senate Minority lacks standing to assert these claims because: (1) an equal population plaintiff must establish that he or she suffered personal harm as a voter to establish standing, which the Senate Minority has not and cannot establish; (2) there is no precedent permitting an official to assert an equal population claim under the theory of legislative standing; and (3) the law does not permit hybrid appearances (or hybrid standing), by which an individual, sued in his or her official capacity, also asserts a claim in his or her personal capacity as a voter. (Sen. Maj. Mem. 7-12.) In addition, the Senate Majority maintains that dismissal is warranted on the ground of *res judicata* as the Senate Minority had the opportunity to assert this claim against the Senate Majority in *Cohen v. Cuomo*, an earlier action between the parties, but failed to do so, and the Senate Minority's cross-claim is barred by the final judgment in that case. (*Id*. at 12-22.)

For the reasons set forth below, we grant the Senate Majority's motion to dismiss the Senate Minority's cross-claim as the Senate Minority lacks standing to assert its cross-claim. The Senate Minority's cross-claim is dismissed with prejudice. As such, we decline to address the Senate Majority's alternate ground for dismissal, *res judicata* preclusion.

## DISCUSSION

### I.  Legal Standard for Dismissal

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). However, the court "must accept as true all

4

material factual allegations in the complaint." *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). A defendant may move for dismissal, pursuant to Rule 12(b)(1), if a plaintiff lacks standing as standing is a jurisdictional issue. *See Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) ("Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975))).

**II.     Application**

Article III, Section 2 of the United States Constitution limits federal court jurisdiction to the resolution of "cases" and "controversies." "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). There are three elements necessary to show the "irreducible constitutional minimum of standing:"

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004) (citations, footnote, and quotations omitted) (quoting *Lujan*, 504 U.S. at 560-61).

**A.     Official Capacity**

The Supreme Court has explained that to establish the standing requirements of Article III, "a plaintiff must allege *personal injury* . . . ." *Allen v. Wright*, 468 U.S. 737, 751 (1984) (emphasis added). The Court has "consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Raines*, 521 U.S. at 819; *see also Warth*, 422 U.S. at 498-99 (explaining that to meet the standing requirements of Article III, a plaintiff must "'allege[] such a

5

personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf" (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962))).

The Senate Minority in its official capacity, however, lacks such a personal interest. In *Raines*, six Members of Congress filed an action challenging the Line Item Veto Act, asserting that their claims were properly before the Court under the theory of "legislative standing." *Raines* 521 U.S. at 821. The Court squarely rejected their theory, holding that "these individual Members of Congress do not have a sufficient 'personal stake' in this dispute and have not alleged a sufficiently concrete injury to have established Article III standing." *Id*. at 820-30. The Court also noted that their "claim of standing is based on a loss of political power, not loss of any private right, which would make the injury more concrete." *Id*. The Court distinguished the plaintiffs' claims from other cases in which the legislators had sufficient votes to pass or block a particular bill, but nonetheless were deemed defeated, explaining that the Members' "votes were given full effect" and the Members "simply lost that vote." *Id*. at 824. At least one three-judge panel has held that, under *Raines*, members of a redistricting panel similar to LATFOR had no standing to challenge an enacted redistricting plan. *See Quilter v. Voinovich*, 981 F. Supp. 1032, 1038 (N.D. Ohio 1997), *summ. aff'd*, 523 U.S. 1043 (1998). As that panel noted, "the precedent of granting the plaintiffs standing in this context would invite any legislator who was outvoted on a particular measure to bring a constitutional challenge to that measure merely because he or she had not prevailed." *Id*.

This Court concludes that the Senate Minority in its official capacity does not have the constitutionally required standing to assert their equal population claim.

### C.     Personal Capacity

Assuming *arguendo* that the Senate Minority, if granted leave to amend its cross-claim, could establish that Senators Sampson and Dilan are each residents of underrepresented voting districts and, therefore, would have standing to assert equal population claims in their personal capacities, *see Baker v. Carr*, 369 U.S. 186, 204-08 (1962) (explaining that "voters who allege facts showing disadvantage to themselves as individuals have standing to sue"), they are nonetheless precluded from asserting cross-claims in their personal capacities.  There is no authority that expressly permits a defendant, sued solely in his or her official capacity, to assert a cross-claim in his or her personal capacity.  The Senate Minority points to Rule 13(g) of the Federal Rules of Civil Procedure to support its contention that such a cross-claim is permissible.  Rule 13(g) states, in pertinent part, that:  "A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action . . . ."  Fed. R. Civ. P. 13(g).  The Advisory Committee notes do not shed light on the definition of the term "party."  Nor has the Court located any cases in our Circuit interpreting the term "party" as used in this rule.

However, the Circuit has considered who constitutes an "opposing party" for purposes of asserting a counterclaim under Rule 13(b).  *See* Fed. R. Civ. P. 13(b) ("A pleading may state as a counterclaim against an opposing party any claim that is not compulsory").  That caselaw is instructive here.  In *Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875 (2d Cir. 1981) ("*Banco Nacional*"), the Circuit held that, in general, "when suit has been brought against a defendant in one capacity, Fed. R. Civ. P. 13(b) does not permit the defendant to counterclaim in another capacity," *id*. at 885.  Thus, the Circuit concluded in that case that a bank sued in its corporate capacity could not counterclaim in its capacity as a trustee because plaintiff was "not a party opposing" the trustee.  *Id*. at 886; *see also* Wright & Miller, *Federal Practice & Procedure*

7

§ 1404 (3d ed. 2013) (stating "general rule" is that when, "defendant is sued in one capacity[,]" he cannot "seek[] to plead a counterclaim in another capacity"); *cf. DEF v. ABC*, 366 F. Appx. 250, 253 (2d Cir. 2010) ("Banco Central is not an 'opposing party' because the interference with a contract claim is brought against Banco Central in its regulatory capacity and not in its capacity as assignee of the two banks-in-liquidation."); *Metcalf v. Golden* (*In re Abdox, Inc.*), 488 F.3d 836, 840 (9th Cir. 2007) ("It is well-established that when a party sues in his representative capacity, he is not subject to counterclaims against him in his individual capacity."). In short, in *Banco Nacional*, the Circuit concluded that each of a person's different legal capacities constitutes a separate "party." *See* 658 F.2d at 886; *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543 n.6 (1986) ("Acts performed by the same person in two different capacities are generally treated as the transactions of two different legal personages.").

In so holding, though, the Circuit cautioned that "it will not always be wise to apply the 'opposing party' rule mechanically." *Banco Nacional*, 658 F.2d at 886. Indeed, since *Banco Nacional*, two exceptions have developed to the general rule that a defendant may only counterclaim in the capacity in which he is sued. A counterclaim in a different capacity may be permitted if (1) the counterclaim would benefit both capacities of the defendant asserting the claim or (2) principles of equity and judicial economy support such a counterclaim. *See Blanchard v. Katz*, 117 F.R.D. 527, 529 (S.D.N.Y. 1987) (permitting partners sued in individual capacity to assert counterclaims on behalf of partnership because defendants would benefit individually from claims and judicial economy favored resolving all claims in one case); *see also Banco Central de Paraguay v. Paraguay Humanitarian Found.*, No. 01 Civ. 9649(JFK), 2005 WL 2861598, at *2 (S.D.N.Y. Oct. 31, 2005) (discussing *Blanchard* exceptions).

The principles outlined above interpreting who is a party for purposes of a counterclaim apply with equal force to the question of who is a party for purposes of asserting a cross-claim.

8

*See Pruco Life Ins. Co. v. Constance*, No. 07-9615, 2010 WL 989175, *1–3 (E.D.La. March 15, 2010) (applying opposing party rule to cross-claims and dismissing cross-claim). Thus, because Senators Sampson and Dilan were sued in their official capacities, the general rule bars a cross-claim in their individual capacities. Furthermore, none of the exceptions to this general rule apply here.

First, the interests of the Senators in their official capacities do not appear to be aligned with their interests in their individual capacities. In their official capacities, they purportedly defend the validity of the redistricting plan, while in their individual capacities they seek to have the plan struck down. This point is made clear by the fact that the Senators are named as defendants in their official capacities, but their cross-claim in their individual capacities corresponds with intervenor-plaintiffs' claims challenging the Senate Plan. Thus, the Court is unable to conclude that Senate Minority's cross-claim benefits the Senators in both capacities in this case. *See id*. at *3 (dismissing cross-claim because interests of person in her individual capacity not necessarily aligned with interests in capacity as trustee).

Second, considerations of equity and judicial economy do not militate against dismissing the cross-claim. The equal population claim raised in the Senators' cross-claim can be litigated by intervenor-plaintiffs in this case, who raise analogous claims. Moreover, as the Senators acknowledge, because they are named defendants, dismissal of their cross-claim will not preclude them from participating in this litigation and advocating their views that the Senate Plan is unconstitutional. (Sen. Min. Opp'n at 11.)

We conclude that the Senators may not assert their cross-claim in one capacity, while at the same time, defend themselves in the underlying action in another legal capacity. The Senate Majority's motion to dismiss the Senate Minority's cross-claim is granted. The Senate Minority's cross-claim is dismissed with prejudice. Accordingly, we decline to address the

Senate Majority's second ground for dismissal—that the Senate Minority is barred from litigating its cross-claim under the doctrine of *res judicata*.

## CONCLUSION

For the reasons set forth above, the Senate Majority's motion to dismiss the Senate Minority's cross-claim is granted. Accordingly, the Senate Minority's cross-claim is dismissed with prejudice.

SO ORDERED.

DATED: Brooklyn, New York
         October 29, 2013

                                          _____/s/_____
                                                      REENA RAGGI
                                          United States Circuit Judge

                                          _____/s/_____
                                          GERARD E. LYNCH
                                          United States Circuit Judge

                                          _____/s/_____
                                          DORA L. IRIZARRY
                                          United States District Judge